Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Ashveen S. Dhillon (14189)
JOHNSON & GUBLER, P.C.
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117-5865
Phone: (702) 471-0065
Fax: (702) 471-0075
mjohnson@mjohnsonlaw.com
rgubler@mjohnsonlaw.com
adhillon@mjohnsonlaw.com

*Counsels for Debtor/Defendant/Counter-Claimant
Andrew Bunker Platt*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No.: 19-17282-btb |
| | Chapter 7 |
| ANDREW BUNKER PLATT and RUTH ANN PLATT, | |
| Debtors. | |
| WOODS & ERICKSON, LLP, a Nevada limited liability partnership, d/b/a WOODS ERICKSON & WHITAKER, LLP, | Adversary Proceeding 19-01125-btb |
| | **DEBTOR'S AMENDED MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| vs. | Hearing Date: February 10, 2021 |
| | Hearing Time: 10:00 AM |
| ANDREW B. PLATT, an individual, | |
| Defendant. | |

Defendant/Counter-claimant ANDREW PLATT (hereinafter "Mr. Platt"), by and through his counsel, Johnson & Gubler, P.C., respectfully move the Court for summary judgment against WOODS & ERICKSON LLP's ("WEW" or "the Firm") claims asserted in its Adversary Complaint Objecting to Discharge of Debtor filed on December 27, 2019 [ECF 34] ("Complaint"). Specifically, Debtor requests that the Court grant summary judgment on the following claims raised in the Complaint: 1) objection to discharge on the basis of 11 USC § 523(a)(2), and; 2)

-1-

objection to discharge on the basis of 11 USC § 523(a)(4).

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Andrew Platt, attached hereto as **Exhibit 1**, all pleadings and papers of record, and any oral argument this Court may entertain.

## I.  INTRODUCTION:

This lawsuit pertains to the facts and circumstances surrounding Mr. Platt's separation from his former employer, WEW, and Platt's formation of a new law firm named L&S Counselors, Ltd ("**L&S**"). Following the death of the Firm's managing partner, R. Glen Woods ("**Woods**"), the remaining partners forced out, refused to pay compensation to, and then sued, the two attorneys who worked closest with Woods: Platt and Woods' son, Kent Woods. During the same time, Plaintiff contacted Woods' clients to take over his estate planning and tax practice. The Defendant's focus has been on whether, as an employee, Platt was entitled to compensation after his separation from the firm. The Plaintiff's focus has been whether Platt was a partner in the sense that he owed the Firm and its non-managing partners' fiduciary duties, and whether, by extension, Platt was prevented from providing legal and non-legal services outside the firm.

## II.  STATEMENT OF FACTS:

### A.  *Platt's side work for the Dept. of Education did not consist of legal services that would entitle the Firm to a share of compensation.*

Prior to becoming an attorney, Platt earned a degree in secondary education and obtained a teaching certificate. *See* Platt's Declaration, attached hereto as **Exhibit 1.** After becoming an attorney, Platt occasionally performed pro bono work for educational causes. *Id.* Platt also served as a member of the board of a charter school, Renaissance Academy. *Id.* As a member of the board, Platt got to know the founder of Renaissance Academy, and occasionally provided legal services to him for work separate from Renaissance Academy. *Id.*

Eventually, Renaissance Academy was forced by the Nevada Department of Education to shut down. *Id.* Platt was appointed by the State of Nevada under NRS 388A.306(5) to oversee the shutdown of the school (the "**Shutdown Services**"). *Id.* All Renaissance amounts in dispute were

**Johnson & Gubler, P.C.**
LAKES BUSINESS PARK
8831 WEST SAHARA AVENUE
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

paid as compensation for the Shutdown Services. *Id.* The work consisted primarily of Platt overseeing the transfer of student education records and transcripts to new schools. *Id.* Platt also oversaw the distribution of the school's physical assets, such as computers and desks, which were given to other charter schools. *Id.* The Shutdown Services were not legal services; no legal degree or license was required. *Id.* Generally, a school administrator would fulfill this role. *Id.* Platt was put in charge of the process because of his teaching background and because of his familiarity with the school as a board member. *Id.*

The only time that the Shutdown Services were even tangentially related to legal services was when Renaissance Academy needed to make a claim on an E&O policy to recover public funds. *Id.* Platt approached the head of the litigation work at the Firm, Brian Whitaker because of his prior litigation experience in insurance and asked if Renaissance could engage WEW to provide legal services, but Whitaker declined and provided recommendations, including Royal Jones. *Id.* Platt, on behalf of Renaissance Academy, retained Royal Jones to make the claim, and Platt himself did not undertake the legal services. *Id.*

Further, WEW was fully aware of Platt's work for Renaissance Academy. The matter was not hidden in any way, emblematic of this was the fact that Platt brought a large fireproof cabinet of school records to his office. *See* Deposition of Allison Miller at 92:5-14, a true and correct copy of which is attached hereto as ***Exhibit 2*** and incorporated herein by this reference. To Platt's knowledge, the firm has not been engaged by the Department of Education before or since, nor has the firm sought to serve as a receiver in liquidation for other charter schools or, for that matter, any entities public or private. *See* **Exhibit 1.**

### B. Platt's work for referrals from the CPA in Columbia were negotiated and authorized by the managing partner and thus the Firm has no claim on them.

On September 28, 2017, Platt formed L&S after obtaining permission from Woods. Notwithstanding the fact that Platt had formed L&S, until Platt separated from WEW in April 2018, he continued to work for WEW, bill hours for WEW clients, generate revenue for WEW, bring new clients to WEW and run all clients through WEW except those referred by Don Joffe,

-3-

Platt's business contact who was an accountant. *Id*. WEW knew that Platt would handle Joffe's referrals outside of the Firm. *Id*. They are aware that until Platt's ejection from the firm in April 2018, L&S had only three clients. *Id*. All of them were established clients of Joffe, and as explored over multiple depositions, there were literally only three of them. *Id*.

Further, ample evidence shows that the Firm knew of and approved all of Platt's and L&S's actions. L&S documents were accessible to WEW and its staff. *Id*. Far from a concealed secret, WEW's engagement letter was updated to reflect the existence of L&S and contemplated dual representation by both L&S and WEW. *See, e.g.*, Tcholakian Engagement Letter at Section 8, a true and correct copy of which is attached hereto as **Exhibit 3**, and Cates Engagement Letter at Section 8, a true and correct copy of which is attached hereto as **Exhibit 4.** The most prominent example of this was that all three partners, Whitaker, Erickson, and Woods, each sent clients materials referencing L&S. *See* **Exhibits 3, 4**.

    **C.**    ***Platt was an employee of the Firm and is therefore entitled to compensation.***

The Firm claims that Platt was made a partner in January 2016. *See Complaint [ECF 34], p. 2, ¶ 10.* However, as demonstrated by archives of the Firm website, the Firm started referring to Platt as a junior or limited partner as early as the fall of 2014. Thus, it is clear that WEW's reference to an attorney as a "partner" or "limited partner" or "junior partner" cannot be construed as an indication that the attorney is a formal partner in the WEW entity, but rather, simply a reference to an attorney with a supervisory role in the firm structure according to the general vernacular common for law firms.

In January 2016, the Firm stopped paying Platt a salary and started paying him strictly a commission equal to fifty percent (50%) of the fees he generated for the Firm. *See* **Exhibit 1**. At the same time, WEW started classifying Platt as a partner for federal tax purposes. Platt started receiving K-1's instead of W-2's in 2016. By doing so, WEW avoided employment taxes, 401(k) matching, and other sums due to or with respect to employees which are not due to partners. *Id*.

Indeed, an audit performed in 2018 by the Nevada Department of Taxation found that the Firm had substantially misclassified and underreported wages from the time period of 2016 to 2018.[1]

As a result of the Firm classifying Platt as a partner rather than an employee, Platt was required to pay substantial self-employment taxes, was deprived of receiving 401(k) matching from the Firm, and was deprived of other benefits afforded to employees of the Firm. *Id*. Thus, while Platt asserts that WEW misclassified him for tax purposes for its own gain, even if the classification had comported with IRS or Nevada Department of Taxation rules, the label under the tax codes simply does not create duties under state business organization law[2]. Further, Platt cannot be characterized as a partner when he failed to sign the Partnership Agreement, as required by Section 2.7 thereof, which states: "[a new partner] ***must*** execute a counterpart to this Agreement and agree to be bound by all the terms and provisions thereof." *See* Partnership Agreement, attached hereto as **Exhibit 5.**

III.   **LEGAL ARGUMENT**

   A.   ***Standard for Summary Judgment.***

Federal Rule of Civil Procedure 56 provides that summary judgment **<u>shall</u>** be granted where the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. After the movant has made a properly supported summary judgment motion, as is the case here, the nonmovant has the burden of setting forth "specific facts showing the existence of a genuine issue of fact for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The nonmovant may not rely on the allegations or denials in its pleadings, but must come forward with an affirmative showing of evidence. *Sheedy v. Deutsche Bank Nat'l Trust Co*. (D. Mass., 2014).

---

[1] The Report was filed under seal in Case No. A-18-774926-C in the Eighth Judicial District Court, Clark County, Nevada. However, Platt does not currently possess that Report to attach to this Brief.
[2] *See Commissioner v. Tower,* 327 U.S. 280, 287, 66 S. Ct. 532, 536 (1946).

Summary judgement is appropriate and must be granted where there is no genuine issue of material fact. Fed. R. Bankr. P. 7056. Rule 7056(c) "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the proof at trial." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Although the moving party first bears the burden of demonstrating the lack of a genuine issue of material fact for trial, that burden may be discharged by the party's demonstration to the court an absence of evidence necessary to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325. Once the moving party has satisfied its burden, the moving party is entitled to summary judgment as a matter of law if the nonmoving party fails to produce affidavits, depositions, or other evidence containing "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324-25. "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp.* 68 F.3d at 1221. Factual disputes of which resolution would not affect the outcome of the suit are irrelevant to a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "Summary judgement should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Celotex*, 477 U.S. at 324-25.

**B.      *The exception in 11 USC § 523(a)(2) does not apply as a matter of law***

The alleged debt Plaintiff seeks to deny discharge is not causally connected to their allegations of fraud. Section 523(a)(2)(A) of the Bankruptcy Code provides an exception for discharge for any debt for "money, property, services, or an extensions, renewal or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 USC § 523(a)(2)(A). To succeed

on its 523(a)(2)(A) claims, the Firm would have to establish each of the following elements: (1) the debtor made . . . representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010). The elements of a fraud claim under Nevada law (which would have applied in the State Court Action) are essentially identical to the elements used by the Ninth Circuit. *See JA. Jones Constr.Co. v. Lehrer McGovern Bovis, Inc.,* 121 Nev. 277, 290-291, 83 P.3d 1009, 1018 (2004).

There is no material factual dispute about the money received from Plaintiff. While the parties disagree about the *characterization* for tax purposes, there is no dispute that the wages or partnership distributions were based on the agreement to pay Platt fifty percent of amounts collected by the Firm for his billed services. So, if Plaintiff could prove its other allegations, it does not allege any money, property, or services Platt obtained from Plaintiff flowed from the alleged false pretenses or actual fraud. While the Firm objects to dischargeability to the extent of its claims under 11 U.S.C. §523(a)(2), it cannot prevail because it does not make allegations which touch on the element of causation.

The Firm's complain is laden with the hot button terms like "misrepresentation," "fraudulent activities," "breach of duty," "conceal," and "conversion." But the Firm's own claims for relief admits that they believe the any misrepresentations were to hinder enforcement against Platt not induce the payment of any amount by the Firm to Platt. *See* Adversary Complaint [ECF 1] p.7 ¶36 and p. 9 ¶47. This is fatal to a §523(a)(2) objection. Even if Plaintiff proves during a trial that Platt became the deepest, blackest fountain of lies in the midst of the Firm's breakup after Glen's death, on the matter of the adversary proceeding for an exemption to discharge, their own allegations admit that anything they allege was *not* a proximate cause of the damages they demand.

Likewise, the Firm recites some of Platt's harmless actions pertaining to billing in the context of denying Platt's discharge even though they have no bearing on (a)(2)(A) or (a)(4). Even

though the Firm does not dispute that Platt received a total of $240 from the billings and that he forwarded this money to the Firm, it still repeats the allegations of deleted billing entries in Paragraphs 15, 25, 26, and 27 of its Adversary Complaint. Likewise the Firm acknowledges that Platt's removal of his own personal directory from the network along with Glen Woods' and Kent Woods' directories hid nothing as the contents were on both the onsite and offsite backups that Platt had been instrumental in maintaining. The Firm recites these details as if they were nefarious, but then does not allege that these acts were connected with any harm, let alone the Firm's providing "money, property, services, or an extensions, renewal or refinancing of credit." Even if the Firm proved some compensable damages from these actions, the Firm cannot skip over the definitional limitation on the remedy that denies discharge only "to the extent" a debt was obtained by fraud etc. The Firm's (a)(2)(A) claim should be rejected as a matter of law because the Firm does not allege that any amount of the damages is connected to money obtained from the firm **by** false pretenses, a false representation, or actual fraud.

Additionally, there exists no genuine issue of material fact pertaining to Plaintiff's 11 U.S.C. §523(a)(2)(A) objection with respect to money that Platt obtained from other parties. There is no dispute that Platt obtained money from his three L&S clients and Charter School Authority for the work he performed. While Plaintiff now disputes that Platt obtained consent from the Firm's managing partner before working with clients outside the Firm and disputes that Platt had any right to provide non-legal services to the Charter School Authority, these issues do not bear on the exception to discharge even if they are decided in Plaintiff's favor. Even though each of the Firm's partners sent out engagement letters referencing L&S, the Firm now alleges that Platt's work with L&S was concealed and part of a scheme to defraud the Firm. *See* **Exhibit 3** and **Exhibit 4**. The Firm had access to and used documents prepared by L&S. *See* **Exhibit 1**. But these allegations of concealment or misrepresentation do not give rise the elements of a §523(a)(2) objection.

The Firm is claiming funds paid—not by it—but by third parties, and statements or amounts paid by others are not proper elements on the issue of the fraud exemption. *Williams v. Sanderson*, 2013 BL 221232, 6 (9th Cir 2013) (a §523 complaint focuses on the debtor's prior

-8-

dealings with an objecting creditor—not dealings with other parties). This is proper as the issue is whether statements at the time were intended to cause the creditor to obtain money, property, services, or credit that debtor later attempts to discharge in bankruptcy to avoid repayment to the creditor. *See* 11 U.S.C. §523(a)(2)(A).

Because Plaintiff does not claim any damages measured by anything it provided Platt but attempts to stake a claim over Platt's own revenue that he earned for work that he performed for third-parties, the Court should find the exemption inapplicable as a matter of law. Even if Plaintiff were able to prove each allegation raised in its Complaint, which it cannot, the exemption, on its face, applies only "to the extent obtained by" fraud, Plaintiff would still be unable to establish the elements of a 11 U.S.C. §523(a)(2)(A) exception to dischargeability. Therefore, summary judgment in Platt's favor is warranted on this claim.

### C. Plaintiff own allegations fail to trigger 11 USC § 523(a)(4)

Plaintiff claims Platt breached state law fiduciary duties but the bankruptcy exemption is strictly limited to federally-defined fiduciary duties. Thus, there is no genuine issue of material fact pertaining to Plaintiff's 11 U.S.C. §523(a)(4) claim. While the parties disagree whether Woods gave permission to Platt as an employee or as a partner (or whether he gave permission at all), fundamentally, neither the status as a partner nor as an employee rises to the type of fiduciary duty capable of creating a denial of discharge. The limits on the dischargeability of debts contained in Section 523 should be construed strictly against creditors and in favor of debtors. *E.g., Gleason v. Thaw*, 236 U.S. 558, 562 (1915); *In re Houtman*, 568 F.2d 651, 656 (9th Cir. 1978). Plaintiff's interpretation of 523(a)(4) would deny bankruptcy's fresh start to all manner of debts where the purpose of the denial of discharge is to protect society from a narrow range of fraud or defalcation through abuse of a trustee relationship. 11 U.S.C. 523(a)(4) denies discharge those acting in roles such as trustee or receiver where the abuse of their special status gives rise to the debt. *See Mills v. Gergely (In re Gergely),* 110 F.3d 1448, 1450 (9th Cir. 1997)*; see also Ragsdale v. Haller,* 780 F .2d 794, 796 (9th Cir. 1986). Even in 1934, the Supreme Court asserted that the limitation on the

-9-

fiduciary duty language "has been fixed by judicial construction for very nearly a century." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934). Accordingly, the Ninth Circuit has long held that the status of fiduciary is particular to federal law rather than state law. *E.g.*, *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003). Specifically, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996).

There is dispute about the applicable duties under state law and whether Platt observed or violated them. While Platt was not a partner in the meaning of NRS 87, the Firm claims that Platt was made a partner in January 2016. *See Complaint [ECF 34], p. 2, ¶ 10.*  However, in the video promoting the Firm on its website, the Firm started referring to Platt as a junior or limited partner as early as the fall of 2014. Thus, it is clear that WEW's reference to an attorney as a "partner" or "limited partner" or "junior partner" should not be construed as an indication that the attorney is a formal partner in the WEW entity, but rather, simply a reference to an attorney with a supervisory role in the firm structure according to the general vernacular common for law firms.

Additionally, despite Plaintiff paying Platt on commission and issuing K-1's to Platt, Plaintiff did so specifically to avoid employment taxes, 401(K) matching, and other sums. Plaintiff's classification of Platt as a partner was done purely for its own financial benefit.  Indeed, the Nevada Dept. of Taxation found that Plaintiff was substantially misclassifying and underreporting wages from 2016 to 2018 by Plaintiff engaging in this practice.   In any case, it is undisputed that Platt never entered into a Partnership Agreement with Plaintiff, which states: "[a new partner] *must* execute a counterpart to this Agreement and agree to be bound by all the terms and provisions thereof."  *See* **Exhibit 5, Section 2.7.**  Platt has never made any such agreement with Plaintiff.

But with respect to Plaintiff's objection to dischargeability, the Court should rule that, even on Plaintiff's facts, its allegations would not satisfy the elements of the §523(a)(4) exemption. Even if Plaintiff were able to prove that Platt was an NRS 87 partner without signing the agreement

or that he breached a duty as an employee, such a demonstration would not satisfy the elements of 11 U.S.C. §523(a)(4) because not every state law fiduciary duty creates an exception to discharge. The United States Bankruptcy Court for the District of Nevada has stated the following:

> ***The qualification that the debtor be acting in a fiduciary capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts***, and not to trusts ex maleficio that may be imposed because of the very act of wrongdoing out of which the contested debt arose. There is no reason to believe that section 523(a)(4) will be construed otherwise. ***Thus, unless there be some additional fact, section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, brokers, factors, partners, and other persons similarly situated.*** Also, the commonplace frauds of the ordinary debtor in disposing of his property so as to hinder, delay, or defraud his creditors are not within clause (4). Nor does the phrase "in a fiduciary capacity" include or apply to trusts which are merely implied by law from contracts. 3 *Collier on Bankruptcy* 523-99-523-102 (15th ed. 1980).

*In re Bernardelli*, 13 B.R. 656, 657 (Bankr. D. Nev. 1981) (emphasis added).

Thus, while NRS 87.820 provides that partners are trustees as to profits obtained without the consent of other partners, this is exactly what the *Davis* rule relegates from federal to state law duties.[3] Because they do not have a trustee's duty before a debt arises, they are not fiduciaries in the meaning of 11 U.S.C. §523 (a)(4). *See Chapman v. Bond (In re Bond),* 548 B.R. 570, 578 (Bankr. D. Or. 2016). Entirely in keeping with Nevada's public policy regarding the protection of parties in businesses, no other law applicable to Nevada partnerships establishes a concept of business partners being trustees of an express trust.

Thus, even if Plaintiff were to establish (a) that Platt was an employee who breached a master-servant duty of loyalty for his work for the Charter School Authority and (b) that Platt was a partner owing partnership duties of loyalty and further that he did not obtain approval from Woods to receive income from L&S, these facts would still be unavailing. As a matter of law, these are not trustee duties the breach of which are capable of giving rise to non-dischargeability.

---

[3] Plaintiff cites NRS 87.4336 in addition to NRS 87.820. While Plaintiff disputes the applicability of NRS 87.4336 to a partnership formed in 1997 in light of NRS 87.025, because the "trust" does not arise ex maleficio under 87.4336 either, the same analysis applies.

-11-

Even if Plaintiff were to prove each allegation, without being able to meet the fundamental element of a federal fiduciary duty, the underlying claim would be discharged.

## IV.   CONCLUSION

Based on the foregoing, Debtor respectfully requests that this Court grant this Motion in Defendant's favor its entirety and grant summary judgment denying each of the Firm's objections to discharge.

DATED: December 29, 2020.

JOHNSON & GUBLER, P.C.

*/s/ Matthew L. Johnson*
Matthew L. Johnson, Esq.
Russell G. Gubler, Esq.
Ashveen S. Dhillon, Esq.
8831 West Sahara Avenue
Las Vegas, Nevada 89117
*Attorneys for Andrew Platt*

**CERTIFICATE OF SERVICE**

1. I caused the foregoing *Debtor's Amended Motion for Summary Judgment* to be served.

2. I served the above-named document(s) by the following means to the persons listed below:

   [X]   **a.   ECF System on December 29, 2020:**

   Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

   [ ]   **b.   United States mail, postage fully prepaid, on_____:**

   By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the following parties, at their last known mailing addresses, on the date above written:

   See attached list.

   _____

   **I declare under penalty of perjury that the foregoing is true and correct.**

Signed on: December 29, 2020

Annabelle Nudo                              /s/ *Annabelle Nudo*
Name of Declarant                          Signature of Declarant

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA AVENUE
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075