# EXHIBIT 1

Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Ashveen S. Dhillon (14189)
JOHNSON & GUBLER, P.C.
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117-5865
Phone: (702) 471-0065
Fax: (702) 471-0075
mjohnson@mjohnsonlaw.com
rgubler@mjohnsonlaw.com
adhillon@mjohnsonlaw.com

*Counsels for Debtor/Defendant/Counter-Claimant
Andrew Bunker Platt*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No.: 19-17282-btb |
| | Chapter 7 |
| ANDREW BUNKER PLATT and RUTH ANN PLATT, | |
| Debtors. | |
| WOODS & ERICKSON, LLP, a Nevada limited liability partnership, d/b/a WOODS ERRICKSON & WHITAKER, LLP, | Adversary Proceeding 19-01125-btb |
| | **DECLARATION OF ANDREW PLAT IN SUPPORT OF DEBTOR'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| vs. | |
| ANDREW B. PLATT, an individual; L&S COUNSELORS LTD., a Nevada limited liability company; GATEHOUSE STRATEGIES, LLC, a Nevada limited liability company; JOHN DOE DEFENDANTS 1 through X; and ROE ENTITITES I through X, | |
| Defendants. | |
| ANDREW B. PLATT, an individual; and L&S COUNSELORS LTD., a Nevada limited-liability company, | |
| Counter-Claimants, | |
| vs. | |

-1-

| | |
|---|---|
| WOODS & ERICKSON, LLP, a Nevada limited liability partnership, d/b/a WOODS ERICKSON & WHITAKER, LLP, | ) ) ) ) ) |
| Counter-Defendant. | ) ) |

ANDREW PLATT, being first duly sworn on oath, deposes and states as follows:

1. I am over 18 years of age and I am competent to testify to the facts set forth in the Declaration and have personal knowledge of these facts. I am the Debtor in the above-captioned Chapter 7 bankruptcy proceeding and Defendant and Counterclaimant in the above –captioned adversary proceeding. I make this Declaration in support of Debtor's Motion for Summary Judgment on Plaintiff Wood & Erickson, LLP's ("WEW" and/or "the Firm" and/or "Plaintiff") Adversary Complaint filed December 27, 2019.

2. I am a defendant/counterclaimant in the above-captioned proceeding ("Adversary Proceeding") brought by Plaintiff Woods & Erickson, LLP, D/B/A Woods Erickson & Whitaker, LLP ("WEW" of the "Firm").

3. I worked for WEW from 2007 to April 2018. While at WEW, my practice focused on taxation, estate planning, and business planning.

4. In January 2016, WEW stopped paying me a salary and started paying me strictly a commission equal to fifty percent (50%) of the fees I generated for the Firm.

5. I have never signed WEW's partnership agreement nor was I every asked to do so.

6. I never received a percentage interest in the profits, losses or capital of the WEW, nor did I ever participate in or receive notice of meetings of the partners of WEW.

7. On information and belief, WEW has never attempted to exercise any right of redemption, expulsion, or dissociation with respect to a limited partnership interest purportedly conferred upon me.

8. On information and belief, by classifying me as partner, WEW avoided employment taxes, 401(k) matching, and other sums due to or with respect to employees which are not due to partners of a tax partnership.

9. As a result of the Firm misclassifying me as a partner for tax purposes rather than an employee, I was required to pay substantial self-employment taxes, was deprived of receiving 401(k) matching from the Firm, and was deprived of other benefits afforded to employees of the Firm.

10. I did not consider myself to be a partner, as that term is defined in NRS Chapter 87. Rather, I considered myself to be a "partner" as that term is currently being used by Erickson & Whitaker PC *("EW')* notwithstanding the fact that it is a corporation.

11. Prior to becoming an attorney, I earned a degree in secondary education and obtained a teaching certificate. After becoming an attorney, I occasionally performed pro bono work for educational causes.

12. I also served as a member of the board of a charter school, Renaissance Academy. As a member of the board, I got to know the founder of Renaissance Academy.

13. Renaissance Academy was forced by the Nevada Department of Education to shut down during the school year.

14. I was appointed by the State of Nevada under NRS 388A.306(5) as the custodian of education and employment records to oversee the shutdown of the school (the *"Shutdown Services")*. All payments referenced in WEW's Complaint were paid as compensation for the Shutdown Services. The Shutdown Services consisted primarily of me overseeing the transfer of student education records and transcripts to new schools. I also oversaw the distribution of the school's physical assets, such as computers and desks, which were given to other charter schools.

-3-

15.  The Shutdown Services were not legal services. No legal degree or license was required. The candidates recommended by the School Board each had experience as educators. In fact, the statute contemplates that generally the school administrator (i.e. principal) would fulfill this role. I was put in charge of the process because of my teaching background and because of my familiarity with the school as a board member.

16.  The only aspect where the Shutdown Services involved legal services was when Renaissance Academy needed to make a claim on an E&O policy to recover public funds. I approached Brian Whitaker *("Whitaker")* because of his prior litigation experience in insurance and asked if Renaissance could engage WEW to provide legal services, but Whitaker declined and provided recommendations, including Royal Jones. On behalf of Renaissance Academy, I retained Royal Jones to make the claim and negotiate with the carrier's attorney, and I did not undertake the legal services myself.

17.  I did not seek prior approval from WEW to perform the Shutdown Services as the job did not require the performance of legal services and was not within the scope of WEW's business. To my knowledge, WEW has not been engaged by the Department of Education before or since, nor has WEW sought to serve as a receiver in liquidation for other charter schools or, for that matter, any entities public or private. However, I made no effort to keep my involvement with the school a secret. I talked to several partners and employees of the firm regarding my work for Renaissance Academy, I brought Renaissance Academy files into WEW's offices in a conspicuous manner that triggered questions, and presented Whitaker with an opportunity to get involved when a legal issue arose.

18.  On September 28, 2017, after I had obtained permission from Woods, I formed L&S. Notwithstanding the fact that I had formed L&S, I continued to work for WEW, bill hours

-4-

for WEW clients, generate revenue for WEW, bring new clients to WEW and run all clients through WEW except those referred by Joffe, until I separated from WEW in April 2018.

19. Until I separated from WEW in April 2018, L&S had only three clients, all of which were established clients of Joffe.

20. I had no intention of hiding L&S from WEW's partners nor any reason to do so. I gave L&S documents to WEW staff, I discussed legal issues affecting L&S clients, I had documents on my office wall with L&S's logo, and I participated in a community class wherein I regularly talked about my creation of L&S.

21. I make this Declaration freely and of my own free will and choice and I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Further, Declarant saith naught.

DATED this 24th day of December, 2020.

                                                /s/ Andrew Platt
                                                ANDREW PLATT