# EXHIBIT 3

CONFIDENTIAL



# Woods Erickson & Whitaker LLP

### ATTORNEYS AT LAW

1349 Galleria Drive, Suite 200, Henderson, Nevada 89014
702.433.9696 • Fax: 702.434.0615 • WoodsErickson.com

January 19, 2018

Ara Tcholakian
4120 W. Windmill Lane #101
Las Vegas, NV 89139

    Re:    Engagement of Woods Erickson & Whitaker LLP

Mr. Tcholakian

    Thank you for discussing your legal needs with us. This letter defines the initial scope of our representation and the terms of that representation.

    **Initial Representation**: We are being engaged to represent you individually together with your business interests as you may direct.

    **Initial Scope**: The legal services we have agreed to provide are to coordinate the formation of business entities, maintain record books, bring/defend actions against, provide advice and provide representation in administrative proceedings.

    **Initial Engagement Deposit**: $_____, replenishable during the engagement.

    **Incorporated Terms**: This cover letter contemplates and specifically incorporates your agreement to the Incorporated Terms of Representation as they are amended from time to time. The version of the Terms of Representation in effect at any time is published on the firm website. As provided in the Terms of Representation, if we agree to perform additional services, including services for other entities or persons at your request, the Terms of Representation will apply. When material changes to the Terms of Representation are made, you will be notified in your monthly invoice.

    After reviewing this cover letter and the terms of representation attached to and incorporated with it, please sign to indicate your acceptance.

Very truly yours,

Brian C. Whitaker

Accepted and agreed:

_____
Ara Tcholakian, individually and on
behalf of AMW Precision LLC, Direct
Asset Holdings Inc., General Sales LLC
and Nevatronix L.L.C.

CONFIDENTIAL    PLATT002253

CONFIDENTIAL

# WOODS ERICKSON & WHITAKER LLP
### ATTORNEYS AT LAW

## INCORPORATED TERMS OF REPRESENTATION

1. **Scope of Engagement; Subsequent Matters**. Upon execution of the engagement cover letter and the deposit of the specified engagement deposit, our representation will encompass all matters that may arise, and that are related to the matter defined therein. Unless we otherwise agree, the Terms of Representation then in effect will apply to all future matters for which you engage us as counsel. We are not required to pursue all objectives or employ means which we deem imprudent or unprofessional. We will discuss with you which matters or objectives we are willing and able to undertake. At the conclusion of a matter, even when we continue to work with you on one or more other matters, we will not monitor or apprise you of changes in law that affect a concluded matter unless otherwise agreed.

2. **Client Responsibilities**. You agree to be truthful with us, cooperate with us in the preparation and presentation of legal matters, keep us informed of developments, and abide by these Terms of Representation. Specifically, you agree to inform us of all facts that you may reasonably expect are or become relevant to whether the actions we advise or undertake may be illegal or unethical in any jurisdiction.

3. **Communication**. We shall make every reasonable effort to keep you informed as to the progress of all matters of representation. The file and its progress are open to your inspection at any reasonable time. Unless you tell us to avoid electronic communication, we increasingly utilize electronic telecommunications including cloud-based or hosted platforms.

4. **Periodic Review of Compliance and Implementation**. When the firm, its affiliates, or agents maintain trust or entity records for you and when the firm, its affiliates, or agents, serve as trustee, officer, or registered agent, you understand that we will perform and bill you for periodic reviews, governance, and implementation of planning advice. You understand that the subscription and maintenance fees will be charged in advance either by the firm or its affiliates or agents and that there is no obligation to continue with services if the subscription is cancelled or the fees are not otherwise paid.

5. **Proper Purposes and Disclosures**. You agree that you will not use the firm's services or any trust, entity, agreement, or proceeding which we form, administer, or in which we participate to engage in any action prohibited by law including fraud, fraudulent conveyance, concealment, money laundering, violation of foreign exchange controls, or the evasion or tax or other legitimate obligations. The firm may condition services upon delivery of supporting documentation (redacted or unredacted) and/or representations to satisfy KYC standards or satisfactorily demonstrate the absence of prohibited transactions or purposes.

6. **Team Approach**. Our entire firm will act on your behalf in this matter and any other matters for which we may be engaged. We will assign those members and affiliates of the firm to each matter who we believe have the skills and abilities to meet the needs and resolve the issues presented in our engagement.

7. **Legal Fees; Expenses**. Generally, our fees for services are calculated based upon the applicable hourly rates for the attorneys and legal assistants who do the work. Our personnel bill in tenth-hour increments with an automatic minimum of two-tenths hour for any task. Under some circumstances, it may be appropriate in establishing our fees to take into account additional factors, such as the complexity of the work, the extent to which we have foregone other opportunities in order to satisfy a client's objectives, and the nature of the results that we ultimately achieve for our client. Our rates are based on experience, training and level of professional attainment. Our rates are subject to periodic adjustment.

CONFIDENTIAL

       7.01    Current rates range from $125 for some paralegals and law clerks to $460 per hour for senior partners. Junior partners and CPAs bill at $270 per hour.

       7.02    Engagement deposits. Unless otherwise agreed, any deposit or retainer will be held as security for the payment of any expenses and legal fees when due. You grant to us a lien on and security interest in such retainer, together with all replacements and proceeds thereof. If it becomes necessary for us to access the retainer, we will apply the retainer first to the payment of any expenses advanced by us on your account and then to legal fees. In the event of any such application, a billing statement will be generated and provided to you. At that time, you may be requested either to replenish or to increase the retainer account (sometimes called an "evergreen" retainer). At the conclusion of our legal representation, the unapplied portion of any retainer will be returned to you as you direct.

       7.03    Other fee arrangements. On occasion, and by specific agreement, we may agree to a fee arrangement other than an hourly fee, such as a fixed fee for a specifically defined project or a contingent fee. In such a case, the fee and payment schedule will be set forth in our cover letter to you or in a separate agreement or addendum, but otherwise, these Terms of Representation will apply. Fixed-fee arrangements differ from retainer deposits in that no portion of the fee is refundable. You understand that the portion of legal fees divided with attorneys outside the firm is based on the services they provide to the representation.

       7.04    Expenses. Our hourly rates do not include out-of-pocket expenses that we may need to incur, such as charges made by courts and governmental agencies or related expenses (such as filing fees, service of legal process, subpoena costs, witness fees, etc.), photocopying, long distance telephone, overnight courier services, fees, facsimile service, postage, out-of-town travel expenses, credit card and bank charges, deposition expenses (including costs of transcripts and court reporter's fees for attendance), and fees and charges made by title companies and escrow agents.

       8.    **Associate Counsel, Affiliates, Experts, and Third Parties**. Either you or we may retain experts or other third parties. These specifically include firm affiliates such as Gatehouse Strategies, L&S Counselors, and Desert Trust Services. We shall have the authority to disclose necessary information, execute service agreements, incur expenses, and make advances on your behalf for any items of the type described in this paragraph, in such amounts as we determine to be advisable best in connection with our engagement. By this agreement, you have appointed us as your agent for these purposes of securing such services and incurring expenses of the type described in these Terms of Representation. If we incur such expenses directly, you are responsible for and we shall have the authority to make payment on your behalf for all such items. We will add any such expenses incurred by us to our invoices.

       9.    **Billing Statements**. Generally, the law firm's practice is to render invoices on a monthly basis for services performed during each month. Invoices for a given month are typically sent in the first half of the month for services rendered during the preceding month. Invoices are due at the time they are received. You agree to pay our invoices monthly.

       9.01    You agree to read carefully all statements for services rendered and expenses incurred, and to notify this office, in writing, of any claimed errors or discrepancies in billing. You agree to give us this notice within fifteen days after receipt of any statement. Each statement will be deemed accepted by you in full fifteen days after it is received.

       10.    **Late Payment**. Compound interest at the rate of one and one-half percent per month will accrue on any invoices that become more than thirty days past due. Should you remit a payment by check that is returned for insufficient funds or stop payment, a $35 returned check fee will be assessed to you.

CONFIDENTIAL

Page 2 of 4

PLATT002255

CONFIDENTIAL

11. **Privacy Policy**.

    11.01  To the extent our relationship with you may include the provision of personal financial services, we further inform you of additional policies pertaining to financial services. In the course of providing personal financial services, we collect nonpublic personal information about you that is either given to us by you or obtained by us with your authorization. In order to guard your nonpublic personal information, we maintain physical, electronic, and procedural safeguards that comply with our professional standards.

    11.02  We do not disclose any nonpublic personal information obtained from current or former clients in the course of our practice except as permitted or required by law. Permitted disclosures include, for example, providing information to our employees or, where appropriate, to unrelated third-parties who need to receive such information to assist in providing services to you. In such circumstances, nonpublic personal information is transmitted with the instruction that its confidential nature be respected.

12. **Waiver; Hold Harmless**. You acknowledge that we have made no guarantees. All expressions by us that relate to the possible results of our engagement are based strictly upon our opinions and judgment. You acknowledge that this agreement may be fully disclosed in connection with our representation of you if necessary or required by any court, legal process or discovery procedure.

    12.01  Sometimes, matters are resolved in less time than might be expected. Other times, unforeseen events arise that increase the amount of time required. It is impossible to determine in advance the amount of time that will be needed to complete any particular matter. We will keep you informed through periodic statements of the time used for drafting and preparation of documents, conferences, telephone calls, legal research, court time, necessary travel time, and all other time spent on your behalf.

    12.02  You agree to hold us (including the owners, employees, and agents) harmless to the maximum extent permitted by law for any and all liabilities, losses, costs, and expenses relating to this engagement, as well as losses or expenses incurred by reason of any action taken or committed to be taken by us in good faith. In any case, however, our total liability and that of our owners, employees, and agents for all claims of any kind arising out of, relating to or connected with this engagement shall be limited to the total fees paid to us under this engagement.

    12.03  You waive any claim for breach of fiduciary duty (whether against the firm or any attorney or agent) based on the exercise of the rights granted in these Terms of Representation or relating to collection of amounts owed to us.

    12.04  You waive any claim for breach of any duty of confidentiality which might otherwise extend to the fact of our representation of you and/or financial transactions with you or on your behalf in order that we may, to the extent necessary, (a) effectively participate in any fee dispute or malpractice process involving you, (b) comply with disclosures (other than subpoenas) to a government agency, or (c) effectively participate in an official inquiry by a financial institution.

13. **Termination**.

    13.01  You are free at any time to terminate our attorney-client relationship, subject to court approval when necessary. If you terminate our relationship you agree to pay immediately any unpaid legal fees, expenses, or service fees due us.

    13.02  We likewise reserve the right to terminate our attorney-client relationship for nonpayment of fees or expenses, or for any other reason deemed appropriate under applicable rules of professional conduct, including misrepresented material facts, failure to disclose material facts, or if you

CONFIDENTIAL

fail to cooperate fully with us in the preparation and presentation of legal matters on your behalf. If we reach a point at which there is a serious difference of opinion between us as to how your matters should be handled, we will withdraw if we may legally and ethically do so, or you may terminate our representation, as described above.

13.03 In the event that our appearance is entered in any court proceeding, your failure to pay shall constitute your express consent to our withdrawal of our appearance as your counsel in such proceeding.

13.04 The firm and its affiliates prioritize digital records and may dispose of physical originals as we deem appropriate. Our practice is to retain files for a period of five years; some records are required to be retained for longer periods. We assume no obligation to retain any documents after that period of time. If you would like us to send you your files at that time, please make arrangements with us.

14. **Enforcement**.

14.01 Lawyer's lien. We have a lien on all files, their contents, and all property in our possession until we have received payment in full of all amounts due. In litigation matters in which a money judgment is rendered in your favor, we will have a lien on all proceeds thereof to the extent of any unpaid fees or expenses. In the event that we (including firm affiliates or firm's personnel in whatever capacity) act as trustee, agent, or otherwise control funds or property, you consent and authorize us to apply such funds or property to your account or to otherwise use the authority given us to satisfy your obligations to the firm.

14.02 Cost of collection. If it is necessary for us to bring a legal or other collection action against you to collect any amount due us, you agree to pay all expenses and attorney fees incurred in that action. If we use our own attorneys or legal assistants to pursue such an action or proceeding, the attorney fees you will be responsible to pay shall be calculated on an hourly basis using the applicable hourly rates.

14.03 Choice of Law and Venue. Nevada law will apply to any questions relating to the meaning of any provision of these Terms of Representation. You agree that any court proceeding to enforce, or that arises out of, this Agreement may be commenced and maintained only in the district courts of the State of Nevada or in the United States District Court for the District of Nevada. In the event that it becomes necessary that we seek recovery of fees using the Fee Dispute Arbitration Committee of the Nevada State Bar, you consent to be bound by the procedures and decisions of that body.

15. **General Provisions**.

15.01 Effective date. These Terms of Representation will take effect when you have performed the conditions stated in Section 1, but its effective date will be retroactive to the date we first provided services, if earlier. Even if this Agreement does not take effect, you will be obligated to pay Attorney the reasonable value of any services we may have performed for you.

15.02 Severability. The provisions of these Terms of Representation shall be construed so as to give them the maximum force and effect. Any provision which is found to be void, unenforceable, or not in accordance with the Nevada Rules of Professional Conduct for any reason as written shall be construed to the broadest permissible extent.