EXHIBIT 5

**AMENDED AND RESTATED**
**LIMITED LIABILITY PARTNERSHIP AGREEMENT**
**of**

**WOODS ERICKSON WHITAKER & MAURICE LLP,**
**a Nevada limited liability partnership**

This Limited Liability Partnership Agreement (this "Agreement") is made and entered into this 12th day of February, 2007, by and between R. Glen Woods, John R. Erickson, Brian C. Whitaker and Aaron R. Maurice, all of whom are individuals who reside in Clark County, Nevada, as managing limited partners (the "Managing Partners"); and those individuals or entities who execute the signature page to this Agreement, as additional limited partners (collectively, the "Limited Partners").

**PREAMBLE:**

The predecessor entity to the Partnership was founded on January 1, 1995 by the Founding Partners. The Founding Partners made the decision to form the Partnership because they desired to practice law in a professional, yet collegial atmosphere, while avoiding mistakes that were made by their previous law firms. The Founding Partners share common values of hard work thrift, avoidance of debt, integrity and trust, and dedication and devotion to their clients. The Partnership's client base is stable, and has grown over the years. The Founding Partners made decisions to add other Partners, associates and employees as they became personally acquainted with other competent attorneys who shared their values. On January 1, 2005 the Founding Partners added Brian C. Whitaker to the Partnership as a Managing Partner. On January 1, 2007 the Founding Partners and Whitaker made the decision to admit Aaron R. Maurice to the Partnership as a Managing Partner. The Partners now desire to enter into this Partnership Agreement to set forth their mutual agreement respecting the management, operation and governance of the Partnership.

**ARTICLE I**
**Basic Organization of Partnership**

1.1     Formation. The Managing Partners and the Limited Partners (herein collectively referred to as the "Partners") hereby amend and restate in their entirety the provisions of the existing agreement of limited liability partnership of Woods & Erickson LLP (the "Partnership") pursuant to the provisions of the Nevada Revised Statutes Sections 87.440 et. seq., which law shall govern the rights and obligations of the parties hereto, except as may be set forth elsewhere herein to the contrary. From and after the Effective Date of this amended and restated Partnership Agreement, the terms of this document shall constitute the Partnership Agreement for the Partnership and shall replace and supersede all previous or existing partnership agreements. The Partners or their duly appointed attorneys-in-fact shall promptly execute all certificates and other documents, make all necessary filings or recordings thereof, and perform all other acts necessary to comply with the requirements for the formation and operation of a registered limited liability partnership under the laws of Nevada and the laws of any other state or local governmental jurisdiction In which the Partnership may own property or do business.

1.2    Name.  The name of the Partnership shall be WOODS ERICKSON WHITAKER & MAURICE LLP; provided; however, that the Partnership may transact business under such other names as the Managing Partners may from time to time determine, in the manner set forth in Article V hereof.

1.3    Definitions.  As used in this Agreement, the following terms shall have the meanings set forth:

(a)  "Affiliate of a Partner" means:

(i)  A partnership, limited liability company, corporation, trust or other entity at least fifty percent (50%) of the equity ownership interest in which is owned, directly or indirectly, by or for a Partner;

(ii)  A spouse, ancestor or descendant of a Partner that is an individual; or

(iii)  A partnership, corporation, trust or other entity at least fifty percent (50%) or more of the equity ownership interest in which is owned, in the aggregate, directly or indirectly, by or for, one or more individuals or entities described in paragraphs (i) and (ii), above.

(b)  "Agreement" or "Partnership Agreement" means this Agreement of Limited Partnership, as hereafter amended, modified or supplemented from time to time.

(c)  "Capital Account" means the separate Capital Account maintained for each Partner, in accordance with the provisions of Section 2.6 of this Agreement.

(d)  "Code" means the Internal Revenue Code of 1986, as amended.

(e)  "Effective Date" of the Partnership shall mean the date on which the predecessor entity to the Partnership was founded, which is January 1, 1995. "Effective Date" of this amended and restated Agreement shall mean January 1, 2007.

(f)  "Founding Partners" means R. Glen Woods and John R. Erickson, who founded the Partnership and its predecessor entity on or about January 1, 1995. No transferee or other successor in interest to a Founding Partner shall thereby become a Founding Partner.

(g)  "Limited Partners" means those individuals and/or entities whose signatures appear on the signature page to this Agreement beneath the caption "Limited Partners" collectively.

(h)  "Managing Partners" or "Managing Limited Partners" means collectively, R. Glen Woods, John R. Erickson, Brian C. Whitaker and Aaron R. Maurice, all of whom are individuals who reside in Clark County, Nevada. No reference to a Managing Partner shall in any way alter or be construed as altering in any way the limitation on the personal liability of the Partners for the debts and obligations of the Partnership, as set forth in Article III and elsewhere in this Agreement.

(i) "Partners" means the Managing Partners and the Limited Partners, collectively, where no distinction is required by the context in which the term is used.

(j) "Partnership" or "Limited Liability Partnership" or "LLP" means the registered limited liability partnership established and governed hereby.

(k) "Percentage Interest" or "Partnership Interest" means each Partner's respective interest in the capital, profits, losses, and distributions of the Partnership.

1.4    Character of Business. The purpose of the Partnership and the character of its business shall be:

(a) To engage in the practice of law, including activities incident and ancillary thereto.

(b) To do each and everything necessary, suitable or proper for the accomplishment of the foregoing or that may at any time appear conducive to or expedient for the protection or benefit of the business of the Partnership, and to engage in all activities necessary, customary or incidental to the foregoing. The Partnership may pursue its business as a venture, as a partner or otherwise, either alone or in conjunction with any other person, partnership, association or corporation.

1.5    Principal Place of Business. The principal office and place of business of the Partnership shall be located at 1349 Galleria Drive, Suite 200, Henderson, Clark County, Nevada 89014. Subject to the provisions of this Agreement, the Managing Partners may, from time to time, change the Partnership's principal place of business and establish additional places of business for the Partnership. In such event, the Managing Partners shall promptly notify each Partner, and shall make any filings or amendments of previous filings required by applicable law.

1.6    Term. The term of the Partnership commenced on January 1, 1995. The term shall continue thereafter for a period of thirty (30) years from and after the Effective Date of the amendment and restatement of the Partnership Agreement, unless sooner terminated in accordance with the provisions of this Agreement or as otherwise provided by law.

## ARTICLE II
### Basic Organization of Limited Liability Partnership

2.1    Capital Contributions of the Founding Partners. On the Effective Date of this amended and restated Partnership Agreement, the Founding Partners shall contribute to the Partnership the money and/or property described in Exhibit A to this Agreement, to the extent that the same have not theretofore been contributed. Said money and/or property shall have the value ascribed thereto in Exhibit A. Upon contribution, each Founding Partner shall have the capital account balance set forth in Exhibit A. No other Managing Partner shall be required to make any capital contribution to the Partnership on or as of the Effective Date hereof. Except as may be specifically provided to the contrary in this Agreement, the Managing Partners shall not be obligated to make any additional contributions to the capital of the Partnership.

2.2     Capital Contributions of Limited Partners. As his or her initial contribution to the capital of the Partnership, each Limited Partner shall contribute to the Partnership his Pro Rata Share of the money and/or property described in Exhibit B to this Agreement, on or before the dates therein indicated. Each Limited Partner's Pro Rata Share of each such amount of money and/or property shall be determined by dividing such Limited Partner's Percentage Interest by the total of the Percentage Interests owned by all Limited Partners, as specified in Section 2.3 of this Agreement. Except as may be specifically provided to the contrary in this Agreement, no Limited Partner shall be obligated to make any additional contributions to the capital of the Partnership.

2.3     Percentage Interests. The Percentage Interests of the Partners shall be as follows:

| Partner | Percentage Interest |
| --- | --- |
| Managing Partners: | |
| R. Glen Woods | 34.0% |
| John R. Erickson | 29.5% |
| Brian C. Whitaker | 19.5% |
| Aaron R. Maurice | 17.0% |
| All Limited Partners | 0% |

The Percentage Interest of each Limited Partner shall be as set forth on the signature page to this Agreement. The Percentage Interests of the Partners may be modified, revised or adjusted by agreement of the Managing Partners.

2.4     Additional Capital Contributions. If Managing Partners determine that additional capital contributions from the Partners are necessary for the Partnership's best interests, the Managing Partners shall also determine the total amount to be contributed, and shall so notify each Partner. Within fifteen (15) days after notice of such a determination, each Partner shall contribute to the Partnership such Partner's pro rata share of the total amount to be contributed. Each Partner's pro rata share shall correspond to the Partner's Percentage Interest in the capital of the Partnership. Additional capital contributions shall be made only as specified in this Agreement or as otherwise determined by the Managing Partners.

2.5     Failure to Make Capital Contributions. If, within the time provided, any Partner fails to make a required additional capital contribution as specified pursuant to Section 2.3 above (a "Defaulting Partner"), the Percentage Interests of the Partners in the capital of the Partnership and in the Partnership's profits and losses shall be adjusted pursuant to Section 2.5 below on a pro rata basis. In addition, each Partner shall be notified in writing of the total amount of contributions not made, and, within fifteen (15) days after such notice, a non-Defaulting Partner may make an additional capital contribution in an amount equal to the contributions not made by the Defaulting Partner. If more than one non-Defaulting Partner elects to make such an

additional capital contribution, then the additional capital contribution shall be made by such Partners in proportion to their respective Percentage Interests in the capital of the Partnership. If any Partner makes such an additional capital contribution, such Partner's Percentage Interest in the capital and profits of the Partnership shall be adjusted as provided in Section 2.6, below. If a non-defaulting Partner is unable to make a capital contribution in excess of the amount originally called for under Section 2.2, above, Managing Partners may determine the terms and conditions upon which necessary funds shall be solicited from outside parties, and this Agreement shall be amended accordingly.

2.6    Adjustments of Percentage Interests and Capital Accounts for Additional Contributions. If the Partners make disproportionate additional capital contributions as described in Section 2.5 above, the Defaulting Partner's Percentage Interest and share of the capital and profits of the Partnership shall be decreased and the non-defaulting Partners' Percentage Interests and shares of the capital and profits shall be increased on a pro rata basis. If a non-defaulting Partner makes an additional contribution in an amount equal to the contributions not made by the Defaulting Partner as provided in Section 2.5, above, the Defaulting Partner's Percentage Interest and share of capital and profits shall be decreased and the non-Defaulting Partners' Percentage Interests and shares of the capital and profits of the Partnership shall be increased as appropriate to reflect the changes in cumulative capital contributions.

2.7    Admission of Additional Partners. New Partners may be admitted to the Partnership by the Managing Partners. The Managing Partners shall have the power, exercisable in their sole and absolute discretion, to determine the terms and conditions upon which additional Partners shall be admitted to the Partnership. New Partners must execute a counterpart to this Agreement and agree to be bound by all of the terms and provisions hereof. New Partners shall make such capital contribution and shall receive such Percentage Interests in the Partnership as may be determined by the Managing Partners. Upon the admission of an additional Partner, the Managing Partners shall assign a Percentage Interest to the newly admitted Partner, and shall correspondingly recalculate and adjust the Percentage Interests of all Partners.

2.8    Interest on Capital Contributions. The Partnership shall pay to each Founding Partner a dividend on the amount of such Founding Partner's capital contribution at the rate of one percent per calendar month. Except as may be specifically provided to the contrary in Section 6.3 or elsewhere herein, no Partner shall be entitled to receive interest on its capital contributions (whether initial or otherwise) to the Partnership.

2.9    Return of Contributions. Except as may be specifically provided to the contrary in this Agreement, or except as may be determined by the Managing Partners, with the consent of each Founding Partner: (a) No Partner shall be entitled to a return of its capital contributions to the Partnership (whether initial or otherwise) or to withdraw his capital contribution to the Partnership until the winding up and liquidation of the Partnership; and (b) Any return of capital contributions shall be made solely from Partnership assets and no Partner shall be personally liable to any other Partner for any such return.

2.10    Loans and Borrowing from Partners. Either in addition to or in lieu of additional capital contributions from the Partners, the Partnership may raise funds by borrowing from one

or more of the Partners or their Affiliates. The Managing Partners shall determine the terms of any such borrowing. If so determined by the Managing Partners, such borrowing may take the form of a short-term loan, either with or without interest. The terms of any such short-term loans may require that all such loans be paid in full before distributions of Available Cash Receipts are made to any Managing Partner. Alternatively, the terms of any loans may call for repayment either on demand or in installments, over longer periods of time and/or in installments, and may provide for repayment with interest at fixed or variable rates. Any loans shall, for all purposes, be deemed loans to the Partnership and shall not be deemed capital contributions to the Partnership. All such loans shall be repaid, in accordance with their terms, out of the gross revenues of the Partnership or out of the proceeds of any sale or refinancing of Partnership assets. To the extent of any such unpaid advances, upon the termination and dissolution of the Partnership, the same, together with accrued and unpaid interest, shall
become immediately due and payable.

2.11    Capital Accounts. Individual capital and income accounts shall be maintained for each Partner. The Capital Accounts shall be maintained in accordance with the applicable provisions of the Treasury Regulations. The Capital Account of each Partner shall be (a) credited with the dollar amount of any cash and the fair market value of any property (less any liabilities to which any such property is subject) contributed to the Partnership by the Partner; (b) credited with the amount of any income, gain or profit allocated to the Partner from the Partnership; (c) charged with the amount of any loss or other deduction allocated to the Partner from the Partnership; and (d) charged with the dollar amount of any cash and the fair market value of any property (less any liabilities to which any such property is subject) distributed to the Partner by the Partnership.

### ARTICLE III
### Status of Partners

3.1    Limited Liability. Except only to the extent provided in Nev. Rev. Stat. §87.150(3), no Managing Partner or Limited Partner shall be personally liable for any debts or obligations of the Partnership or for any of the liabilities of the Partnership, whether to the Partnership, to any Partner, or to creditors of the Partnership, beyond the amount contributed by him to the capital of the Partnership, plus his share of the accumulated but undistributed profits of the Partnership.

3.2    No Management Responsibility or Right. Except as may be specifically provided to the contrary in this Agreement, no Limited Partner shall participate in or interfere in any manner with the management of the business of the Partnership or transact any business for the Partnership, except as specifically provided in this Agreement. No Limited Partner shall have any right whatsoever to participate in the management of the Partnership or to vote or otherwise participate in any decision affecting the Partnership or its operations, business or properties.

3.3    No Authority to Bind Partnership. No Limited Partner shall have authority or power to act for, to bind, or to sign any writing for or on behalf of the Partnership or any of the Managing Partners.

3.4    <u>Return of Capital Only From Partnership Assets</u>. No Limited Partner shall be entitled to the return of any amount contributed by him to the capital of the Partnership out of any assets other than the assets of the Partnership, and then only strictly in accordance with the provisions of this Agreement. It is expressly understood and agreed that the Managing Partners shall not be personally liable for the return of any capital or other contributions of any Limited Partner. No Limited Partner shall have the right to demand or receive any property other than cash in return of his contributions to the Partnership. No Limited Partner shall receive any salary or other compensation from the Partnership for any service rendered on its behalf.

3.5    <u>Relationship with Managing Partners</u>. No Limited Partner shall have an interest in the individual assets of any Managing Partner or in any proceeds of any sales of the assets of any Managing Partner by virtue of acquiring or holding a Percentage Interest in the Partnership.

3.6    <u>Expectations of Managing Partners</u>. The Partnership has been formed, and the decision to admit Managing Partners has been made, with the expectation that each Managing Partner will engage in the full-time practice of law in Clark County, Nevada and will participate in the management of the Partnership, shouldering a portion of the responsibility of managing the Partnership's business, utilizing such Partner's best efforts to attract legal business for the Partnership and to supervise and direct others in the performance of their duties in the service or employ of the Partnership. Each Managing Partner, by executing this Agreement and becoming a Partner in the Partnership, undertakes to utilize such Partner's best efforts to cause this to occur.

## ARTICLE IV
### Allocation of Profit and Loss

4.1    <u>Income and Losses</u>. The Percentage Interest of one or more Partners may from time to time be governed by agreement (each such agreement is hereinafter referred to as an "Allocation Agreement") between such Partner and the Partnership. The establishment and amendment of any such Allocation Agreement shall require the approval of the Managing Partners, and shall in all events be subject to the provisions of this Partnership Agreement. During such times as an Allocation Agreement may be in effect, the Percentage Interest and share of Partnership profits and losses of the affected Partner shall be determined in accordance with the Allocation Agreement. Subject to the provisions of any such Allocation Agreements, the net profits and net losses of the Partnership in each taxable year, and each item of income, expense, gain, loss, deduction, credit and tax preference, that is not allocated in accordance with an Allocation Agreement shall be divided among and shall be credited and charged to and against the Partners in accordance with and in proportion to their respective Percentage Interests in the Partnership. In the event that any Partner's Percentage Interest is changed or altered, such Partner's distributive share of Partnership income, expense, gain, loss, deduction, credit and tax preference shall be determined by the Managing Partners by taking into account the varying Percentage Interests of the Partners during the taxable year. Such determination shall be made by the Managing Partners in accordance with the provisions of Code Section 706 and the Treasury Regulations issued thereunder.

4.2    <u>Definitions of Profits and Losses</u>. The "net profits" and "net losses" of the Partnership and each item of income, gain, loss, deduction, credit and tax preference shall be

determined in accordance with generally accepted principles of cash accounting customarily employed by partnerships or by limited liability partnerships for federal income tax purposes, consistently applied.

4.3    <u>Allocation of Income Attributable to Principal Reductions in Nonrecourse Partnership Indebtedness</u>. In the event that one or more Partners has a deficit Capital Account balance resulting in whole or part from allocations attributable to nonrecourse indebtedness of the Partnership, such Partner or Partners shall, to the extent possible, be allocated income or gain in an amount not less than the minimum gain (as defined in the applicable provisions of the Treasury Regulations), and at a time not later than the time the amount of such minimum gain is reduced to an amount that is less than the sum of all deficit Capital Account balances. Any allocation pursuant to this Section 4.3 shall be made by the Managing Partners after consulting with the Partnership's tax counsel, and in accordance with and to the extent required by Treasury Regulations governing partnership allocations attributable to nonrecourse indebtedness.

4.4    <u>Allocation of Gains and Losses upon Disposition of Partnership Property</u>. Notwithstanding the provisions of Sections 4.1 and 4.3, above, and after the allocations of Partnership operating income and deduction for the taxable year have been made, any gain or loss realized by the Partnership upon the sale, exchange, refinancing, foreclosure, involuntary conversion, abandonment or other disposition of the property or assets of the Partnership shall be allocated among the Partners in proportion to their respective Percentage Interests. In making such allocations the Managing Partners shall give effect to the provisions of Section 704(c) of the Code, or any successor provision to such Section, and to the Treasury Regulations from time to time in effect thereunder.

4.5    <u>Tax Credits</u>. Any items of tax credit to which the Partnership is entitled and any recaptures of tax credits previously claimed by the Partnership shall be allocated to the Partners in accordance with their respective Percentage Interests as of the time the item of tax credit or tax credit recapture arises, with the meaning of the applicable provisions of the Treasury Regulations. Any items of tax credit recapture that are not allocated pursuant to the preceding sentence shall be allocated as contemplated by the applicable provisions of the Treasury Regulations.

4.6    <u>Limitation on Liability</u>. Nothing in this Article IV regarding allocation of losses shall alter the limitation on the personal liability of the Partners for the debts or obligations of the Partnership, as set forth in Article III and elsewhere in this Agreement.

4.7    <u>Treatment of Certain Items as Expenses</u>.    Any and all compensation paid to a Partner pursuant to an Allocation Agreement or to the Managing Partners pursuant to Article V of this Agreement shall be treated for all purposes of this Agreement as an expense of the Partnership.

## ARTICLE V
## Authority, Power and Compensation of Managing Partners

5.1    <u>Management of the Partnership; Votes</u>. The Managing Partners, acting as a body, shall have full, exclusive and complete discretion in the management and control of the Partnership and its business for the purposes herein stated. Except as specifically provided otherwise herein, the Managing Partners shall make all decisions by majority vote, with each Managing Partner having one vote for each Percentage Interest in the capital of the Partnership that is owned by such Managing Partner.

5.2    <u>General Statement of Authority to Manage the Partnership; Decision-Making</u>. For purposes of managing the business and affairs of the Partnership, decisions that arise in the course of the business of the Partnership shall be divided into three categories, as follows:

(a)    Routine Decisions are those that arise as a matter of course in the conduct of the ordinary, day-to-day business of the Partnership. Examples include choosing suppliers of products and services used by the Partnership, managing the Partnership's cash flow, dealing with routine personnel matters, approving the issuance of checks to pay normal, recurring Partnership expenses, and the like. Each Managing Partner shall have the authority to make Routine Decisions on behalf of the Partnership, but the Partners expect that Routine Decisions will ordinarily be delegated to one or more designated Managing Partners or to employees of the Partnership, depending upon the decision in question.

(b) Partnership Decisions are those that arise in the course of the business of the Partnership, but that do not necessarily arise daily or even weekly, and that require the exercise of discretion or judgment by the management of the Partnership, and that are not Extraordinary Decisions. Examples of Partnership Decisions include, but are not limited to, the following: (i) expenditures of money or financial commitments that are not routine or recurring, and that do not rise to the level of Extraordinary Decisions; (ii) decisions to hire or terminate employees whose annual compensation from the Partnership exceeds $50,000; (iii) decisions to change the salaries or other compensation of Partnership employees; (iv) the amounts and timing of distributions to Limited Partners who are not Managing Partners; (v) the decision to pay discretionary bonuses to Partnership employees and the amounts of any such discretionary bonuses; (vi) entering into long-term agreements and financial commitments that can reasonably be expected to affect the Partnership's cash flow, such as equipment leases, loan agreements and the like; and (vii) establishing and changing employee benefit programs. Decisions arising in the course of the management of the Partnership that are not Routine Decisions or Extraordinary Decisions are Partnership Decisions.

(c) Extraordinary Decisions are those that affect in profound ways the relationship between the Managing Partners and the Partnership. The following decisions shall be Extraordinary Decisions: (i) the decision to change the Percentage Interest of a Managing Partner; (ii) the decision to redeem the Percentage Interest of a Managing Partner (unless due to the loss of such Managing Partner's privilege to practice law in the State of Nevada); (iii) the decision to liquidate or dissolve the Partnership; (iv) the decision to initiate litigation on behalf of the Partnership, other than the ordinary collection of accounts receivable; (v) the decision to

enter into an agreement, incur indebtedness or otherwise commit resources of the Partnership involving more than $100,000; (vi) the decision to relocate the Partnership's principal place of business or to establish additional places of business for the Partnership; (vii) the sale or other disposition of all or substantially all of the Partnership's assets or business; (viii) a change in the name of the Partnership; and (ix) the termination or modification of any agreement or transaction involving the Partnership if the approval of such agreement or transaction was an Extraordinary Decision.

5.3    Authority to Make Routine Decisions. Each Managing Partner shall have all specific rights and powers required for, appropriate to or incidental to the making and implementation of Routine Decisions, including but not limited to, the following rights and powers:

(a) To borrow money, and, if security is required therefore, to mortgage or subject to any other security device any or all of the assets of the Partnership.

(b) To negotiate, execute and enter into leases and other agreements in connection with the Partnership's assets, including leases and agreements the terms of which may extend beyond the term of this Partnership.

(c) To sell or exchange any or all of the assets of the Partnership upon such terms and conditions as the Managing Partners in their discretion may deem advisable, including a deferred payment sale or an exchange for other assets of any kind.

(d) To acquire and enter into any contract of insurance that the Managing Partners deem proper for the protection of the Partnership, the conservation of its assets, or for any other purpose convenient or beneficial to the Partnership.

(e) To execute and deliver on behalf of the Partnership such documents or instruments as the Managing Partners deem appropriate in their conduct of the business of the Partnership.

(f) To employ and to pay brokers, agents, consultants, attorneys, accountants and other individuals or entities deemed appropriate by the Managing Partners to the conduct of the Partnership's business, including without limitation any persons or entities related to a Managing Partner or in which a Managing Partner has an interest.

(g) To hold title to Partnership assets in the name of a nominee (which may be a Managing Partner so acting) designated by a Managing Partner.

(h) To make any decision or take any action on behalf of another partnership or other entity of which this Partnership is an officer, a manager or managing agent, if such decision or action would be permitted by this Section if made or taken by this Partnership.

5.4    Partnership Decisions. The Managing Partners, acting as a body, are empowered and authorized to make all decisions in the management and operation of the Partnership that are not Routine Decisions or Extraordinary Decisions. Except in an emergency, and unless approved

in advance pursuant to a resolution delegating authority or otherwise, each Managing Partner shall have the right to participate in the deliberations of the Managing Partners in respect of Partnership Decisions. The Managing Partners shall, acting as a body, have all specific rights and powers required for, appropriate to or incidental to the making and implementation of Partnership Decisions as are set forth above in respect of Routine Decisions.

5.5    Extraordinary Decisions.    The decisions identified above as constituting Extraordinary Decisions shall be made by the Managing Partners.

5.6    Execution of Documents and Agreements.    All leases, contracts, deed, encumbrances or other documents that purport on their face to bind the Partnership of the non-contracting Partners that are related to the purposes of the Partnership and that are specifically authorized by this Agreement or by separate written agreement, may be executed and delivered by any Managing Partner on behalf of the Partnership; provided, however, that if such document or agreement relates to a Partnership Decision or Extraordinary Decision, such document or agreement shall contain a representation by the Managing Partner that the necessary approval of the Partnership has been obtained.

5.7    Compensation of Partners.

(a) The Managing Partners shall perform their duties as Managing Partners without compensation for such service.

(b) The Managing Partners shall be reimbursed by the Partnership for the reasonable, direct, out-of-pocket expenses incurred by the Managing Partners while acting on behalf of the Partnership.

5.8    Partnership Opportunities.    Each Partner shall first offer to the Partnership an exclusive right of first refusal with respect to any opportunity within the scope of the Partnership's business or that involves an investment opportunity that is not of a type or nature typically offered by full-service investment or brokerage firms. The Partnership shall have at least fifteen (15) days in which to accept such offer and, if not accepted, the offering Partner shall be free to pursue such opportunity independent of the Partnership and the Partners. The offering Partner shall not participate in the decision of the Partnership whether to accept such offer.

5.9    Dealings with Affiliates of the Managing Partners.    The validity of any transaction, agreement or payment involving the Partnership and any Affiliate of a Partner or Managing Partner that is otherwise permitted by the terms of this Agreement shall not be affected by reason of the relationship between the Partner or Managing Partner and the Affiliate, provided that full and complete disclosure of the nature of the transaction and the nature of the relationship between such Partner or Managing Partner and the Affiliate is made to the Partnership before consummation of the transaction in question.

5.10    Potential Liability of the Managing Partners.    No Managing Partner shall be liable, responsible or accountable in damages or otherwise to the Partnership or to any Partner for any

action taken or failure to act on behalf of the Partnership within the scope of the authority conferred upon the Managing Partners by this Agreement or by law unless such action or omission was intentional or was performed or omitted fraudulently, in bad faith, or amounted to gross negligence on the part of the Managing Partners.

5.11    Indemnification of Managing Partners. The Partnership shall defend, indemnify and hold harmless each Managing Partner and the respective partners, agents, heirs, executors, administrators, employees and Affiliates of each Managing Partner (collectively the "Indemnified Parties") from and against any cost, loss, expense, delay, damage or injury suffered or sustained by them by reason of any acts, omissions or alleged acts or omissions arising out of its activities on behalf of the Partnership or in furtherance of the interests of the Partnership, including but not limited to any judgment, award, settlement, and reasonable attorneys' fees and other costs or expenses incurred in the defense of any actual or threatened action, proceeding or claim; provided that the acts, omissions or alleged acts or omissions upon which such actual or threatened action, proceeding or claim is based were in good faith and were not performed or omitted fraudulently or in bad faith by the Indemnified Parties and did not amount to gross negligence on the part of the Indemnified Parties.

5.12    Section 754 Election under Internal Revenue Code. The Managing Partners may, in their sole discretion, make or revoke the election referred to in Section 754 of the Internal Revenue Code of 1986, as amended, or any successor provision hereafter enacted. Each Partner shall, upon request, supply the information necessary to give proper effect to such an election.

## ARTICLE VI
### Distributions to Partners

6.1    Definition of Available Cash Receipts. The term "Available Cash Receipts" is used herein to determine the amount of cash available for distribution to Partners as a result of Partnership operations, and shall mean all cash revenues and funds received by the Partnership (not including capital contributions to the Partnership or the proceeds of any sales, financing or refinancing of Partnership assets), less the sum of the following to the extent made from such cash revenues and funds received by the Partnership: (i) all principal and interest payments on mortgage and other indebtedness of the Partnership and all other sums paid to lenders; (ii) all cash expenditures (including expenditures for capital improvements) incurred incident to the normal operation of the Partnership's business, including compensation paid to the Managing Partners and expenses of the Managing Partners reimbursed by the Partnership to the Managing Partners; (iii) such amounts as the Managing Partners may elect to retain in the Partnership in order to enable the Partnership to make additional or further investments (whether or not such investments are similar to any other investments or property at any time held or owned by the Partnership); and (iv) such cash reserves as the Managing Partners in their discretion may deem to be necessary or desirable for the proper operation of the Partnership's business.

6.2    Timing of Distributions. Distributions of Available Cash Receipts shall be made when deemed appropriate by the Managing Partners, which decision shall be made in the sole and absolute discretion of the Managing Partners. The Partners agree that Available Cash Receipts may be used to purchase additional investment or business assets for the Partnership,

and understand and agree that accumulation and reinvestment of Available Cash Receipts may occur, in the sole discretion of the Managing Partners, at times when particular investment or business opportunities may not have been identified by the Managing Partners.

6.3    <u>Distributions to Partners</u>. The Managing Partners shall from time to time, whenever they consider appropriate, determine the amount of Available Cash Receipts and the amount or portion, if any, of such Available Cash Receipts that will be distributed to each Managing Partner. Distributions need not be made simultaneously to all Managing Partners. Once the amount of Available Cash Receipts has been determined by the Managing Partners, the amount shall be apportioned and distributed to the Managing Partners in the ratio that their respective Percentage Interests bear to one another.

6.4    <u>Final Authority</u>. The determination of the Managing Partners shall be final and binding with respect to all computations and determinations made pursuant to this Article VI and to Article IX of this Agreement.

## ARTICLE VII
## Books of Account, Records and Reports

7.1    <u>Books and Records</u>. The Managing Partners shall cause to be kept proper and complete records and books of account, in which shall be entered fully and accurately all transactions and other matters relating to the Partnership's business in such detail and completeness as is customary and usual for businesses of the type engaged in by the Partnership. Such books and records shall be maintained in accordance with generally accepted principles of cash accounting customarily employed by partnerships for federal income tax purposes, consistently applied. The books and records shall at all times be maintained at the principal office of the Partnership and shall be open to the reasonable inspection and examination by the Managing Partners at any time.

7.2    <u>Confidentiality of Partnership Books and Records</u>. In no event shall any Limited Partner have any right to inspect or review the books or records of the Partnership at any time or under any circumstance. Each Limited Partner covenants with the Partnership that neither he nor anyone claiming an interest in the Partnership through or on behalf of such Limited Partner shall ever seek any order of any court or governmental agency for the production or inspection of any books or records of the Partnership. Each Limited Partner agrees that, in the event that any inspection or production of any of the books and records of the Partnership shall ever be ordered by any court or governmental agency, or by virtue of any legal or administrative process whatsoever, as the result of any application sought by or on behalf of such Limited Partner, or by any person acting with reference to any interest whatsoever of such Limited Partner in the Partnership or otherwise, the person making the application or otherwise seeking the inspection or production shall pay to the Partnership the sum of Ten Thousand Dollars ($10,000) as a fee for the services of the Partnership in producing the records or other information so sought. If for any reason the fee is not paid by the person making the application or otherwise seeking the inspection, such fee shall be paid to the Partnership by the Limited Partner on behalf of, or in respect of whose Percentage Interest the inspection is requested or ordered. Said fee shall in all events be paid before the Partnership shall be required to produce or make available for

inspection any of its books or records. The right herein granted to the Partnership to collect said fee shall not be construed as a waiver by the Partnership of any objection otherwise available to it with respect to the production of any of its books or records.

7.3    Reports to Partners; Tax Information. Within a reasonable time after the close of each Partnership fiscal year, the Managing Partners shall cause to be sent to each Partner such tax information related to the Partnership as shall be necessary for the preparation by such Partner of his federal income tax return.

7.4    Fiscal Year. The fiscal year of the Partnership shall end on the thirty-first $(31^{st})$ day of December of each year.

7.5    Bank Accounts. The funds of the Partnership shall be deposited in such bank account or accounts, or invested in such interest-bearing or non-interest-bearing investments, as shall be designated by the Managing Partners. All withdrawals from any of such bank accounts shall be made by anyone or more of the Managing Partners, or by the duly authorized agent or agents of the Managing Partners.

7.6    Taxable Year of Partners. The Managing Partners and any Limited Partner who acquires a Percentage Interest of five percent (5%) or more in the capital or profits of the Partnership hereby represent that they use the calendar year as their taxable year for federal income tax purposes.

7.7    Federal Tax Matters Partner. Solely for purposes of Section 6231(a)(7) of the Code, R. Glen Woods shall be the "Tax Matters Partner" of the Partnership. The Tax Matters Partner shall be authorized to carry out, on behalf of the Partnership and at the Partnership's expense, all acts appropriate to such designation, including, but not limited to:

(a)    Receiving and responding to any and all notices and requests from any federal taxing authority;

(b)    Informing all other Partners of any inquiry, examination or proceeding, as required by applicable federal law and, if not so required, as the Tax Matters Partner shall deem appropriate;

(c)    Meeting and negotiating with representatives of any federal taxing authority;

(d)    Entering into a binding settlement agreement with any federal taxing authority on behalf of all or some of the Partners regarding any tax deficiency, assessment, credit or refund; provided that all Partners be given adequate prior notice so that any Partner may, without prejudicing the validity of such a settlement agreement, elect not to be bound by the settlement agreement where permitted under applicable federal tax law;

(e)    Entering into any agreement with any federal taxing authority to extend the limitations period on assessment or collection of adjustments;

(f)     Commencing administrative or judicial proceedings regarding any federal tax matter;

(g)     Intervening in any judicial action or proceeding regarding any federal tax matter, the outcome of which could adversely affect a position taken by the Partnership;

(h)     Prosecute an appeal from a decision or judgment of any court that is wholly or partially adverse to a position taken by the Partnership; and

(i)     Retaining tax advisors, to whom the Tax Matters Partner may delegate such of its rights and duties as the Tax Matters Partner shall consider necessary and appropriate.

## ARTICLE VIII
### Default and Remedies

8.1     <u>Events of Default</u>. Each of the following events shall (upon the giving of the notice and/or passage of time, if any, set forth with respect to each event) constitute an "Event of Default," and the Partner as to whom the Event of Default has occurred shall be a "Defaulting Partner":

(a)     If any Partner shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent; or shall file any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for himself under the present or any future federal bankruptcy act or any other present or future applicable federal, state or other statute or law relating to bankruptcy, insolvency or other relief for debtors; or shall acquiesce in the appointment of any trustee, receiver, conservator or liquidator of said Partner or of all or any substantial part of his properties or his interest in the Partnership. The term "acquiesce" includes, but is not limited to, the failure to file within thirty (30) days after any appointment a petition or motion to vacate or discharge any order, judgment or decree providing for such appointment.

(b)     If a court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against any Partner seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy act, or any other present or future applicable federal, state or other statute or law relating to bankruptcy, insolvency or other relief for debtors, and the Partner shall acquiesce in the entry of such order, judgment or decree within thirty (30) days after the entry of the order, judgment or decree, or if such order, judgment or decree shall remain unvacated and unstayed for an aggregate of ninety (90) days (whether or not consecutive) from the date of entry thereof: or if any trustee, receiver, conservator or liquidator of said Partner or of all or any substantial part of his properties or his interest in the Partnership shall be appointed without the consent or acquiescence of said Partner and such appointment shall remain unvacated and unstayed before an aggregate of sixty (60) days (whether or not consecutive). The term "acquiesce" includes, but is not limited to, the failure to file a petition or motion to vacate or discharge such order, judgment or decree within thirty (30) days after the entry of the order, judgment or decree.

(c)     If any Partner shall admit in writing his inability to pay his debts as they mature.

(d)     If any Partner shall make an assignment for the benefit of creditors or take any other similar action for the protection or benefit of creditors.

(e)     If any Partner attempts to transfer or assign his interest in the Partnership in violation of the provisions of Article X, below.

(f)     If any Partner shall suffer the loss of such Partner's privilege to practice law in the State of Nevada.

8.2     Option to Purchase. Upon the occurrence of each Event of Default, the Defaulting Partner shall give to the Partnership written notice thereof and the Partnership shall have the right and option to purchase the Defaulting Partner's Percentage Interest in accordance with the provisions of Section 8.3 of this Agreement. If the Partnership does not exercise this option, or if the Partnership does not complete the buyout of the defaulting Partner's Percentage Interest within the time limit prescribed by Section 8.3, the term of the Partnership shall continue and the default and the option of the Partnership shall be deemed to have been waived. The Defaulting Partner shall not participate in the decision of the Partnership to exercise the option herein set forth.

8.3     Exercise of Option. If an Event of Default occurs, as defined in Section 8.1, the Partnership may exercise its option to buy the Percentage Interest of· the Defaulting Partner (the "Seller") by giving written notice of the election at any time after the occurrence of the Event of Default (whether or not the written notice required by Section 8.2, above, has been given), but in no event later than thirty (30) days after the date on which the Partnership receives written notice from the Seller of the occurrence of the Event of Default. The purchase price of the Defaulting Partner's Percentage Interest in the Partnership shall be determined in accordance with Section 8.4, below.

8.4     Determination of Purchase Price.

(a)     Percentage Interest of Limited Partner. The purchase price of the Percentage Interest of a Limited Partner shall in all events be the sum of One Hundred Dollars ($100.00). The foregoing purchase price shall apply regardless of the existence of any other agreement or understanding, unless such agreement is set forth in a writing that expressly provides that it amends this Section 8.4 of this Partnership Agreement.

(b) Percentage Interest of Managing Partner. The purchase price of the Percentage Interest of a Managing Partner shall be the sum of the Managing Partner's capital account balance, as set forth in Exhibit "A", attached hereto, and the amount of Available Cash Receipts that would otherwise have been distributed to the Managing Partner, if the Event of Default had not occurred, during the period of thirty (30) days after the exercise of the option herein set forth.

(c) Sole Consideration. The purchase price calculated pursuant to this Section 8.4 constitutes the total sum that the Partnership shall be obligated to pay in respect of the

Percentage Interest of a Partner whose Percentage Interest is purchased pursuant to this Article VIII. A Partner whose Percentage Interest is purchased pursuant to this Section shall have no other or further interest in or to the Partnership or any of its assets or properties.

8.5     Closing. The closing of the purchase of a Partner in the Partnership pursuant to Article VI of this Agreement shall be held at the time and place and in a manner mutually agreeable to the parties to the transaction. In the absence of unanimous agreement, the closing shall be held at the principal office of the Partnership thirty (30) days after the expiration of the option to purchase under the provisions of this Article VIII. At the closing the Seller, personal representative or other holder of the Percentage Interest being sold shall assign and deliver the Percentage Interest being sold to the purchaser or purchasers thereof.

8.6     Payment of Purchase Price. If the Percentage Interest being purchased is that of a Limited Partner, the Partnership shall pay the purchase price at the closing. If the Percentage Interest being purchased is that of a Managing Partner, the Partnership shall pay the purchase price in installments, at the times Available Cash Receipts would have been distributed to the Managing Partner if the Event of Default had not occurred.

8.7     Event of Default Involving Managing Partner. Upon the occurrence of an Event of Default (as defined in Section 8.1) occurs with respect to the Percentage Interest of a Managing Partner, then regardless of whether or not any option to purchase set forth herein shall be exercised, such Managing Partner shall thereupon and thereafter have no further right to participate in the management of the business of the Partnership. Such Managing Partner shall be deemed to have resigned such Managing Partner's office as Managing Partner of the Partnership, as provided in Section 9.3.

## ARTICLE IX
### Dissolution, Withdrawal

9.1     Dissolution. The Partnership shall be dissolved upon the first to occur of the following events:

(a)     The expiration of the term of the Partnership as established in Section 1.6 of this Agreement.

(b)     The sale or other disposition of all or substantially all of the assets of the Partnership and the receipt of all proceeds to be derived from such sale or disposition.

(c)     The withdrawal of a Managing Partner unless the Partnership is continued pursuant to the provisions of Section 9.7 of this Agreement.

(d)     The death of a Managing Partner, unless the Partnership is continued pursuant to the provisions of Section 9.7 of this Agreement.

(e)     The disability of a Managing Partner, unless the Partnership is continued pursuant to the provisions of Section 9.7 of this Agreement. For purposes of this Agreement, a Managing

Partner shall be deemed to be disabled if, in the opinion of an independent physician selected by the Partnership, such Managing Partner is likely to be unable to engage in the fulltime practice of law for a period of longer than one year.

(f)     The bankruptcy of a Managing Partner, unless the Partnership is continued pursuant to the provisions of Section 9.7 of this Agreement.

(g)     Sixty days after the Managing Partners give written notice of their decision to liquidate or dissolve the Partnership, as provided in Article V hereof, unless the Partnership continued pursuant to the provisions of Section 9.7 of this Agreement.

9.2     <u>Withdrawal of a Managing Partner</u>.

(a)     A Managing Partner may withdraw from the Partnership by giving written notice of such withdrawal to each other Managing Partner or, if no other Managing Partner remains, to each Partner. The notice shall also set forth the day upon which withdrawal is to become effective.

(b)     If a Managing Partner withdraws from the Partnership, the remaining Managing Partners shall cause an accounting to be prepared covering the transactions of the Partnership since the end of the previous calendar year. Thereafter, the Partnership shall not sell or dispose of or allow to be sold or disposed any Partnership asset unless the sale or disposition was the subject of a contract entered into by and binding upon the Partnership prior to the date the notice of withdrawal was given, other than in the ordinary course of the business of the Partnership.

(c)     Upon the withdrawal of a Managing Partner, the Partnership shall purchase the Percentage Interest of the withdrawing Managing Partner in the manner and at the time provided in Section 8.6, as if the Partnership had been a "Buyer," and as if the withdrawing Managing Partner had been a "Seller," as those terms are used in Section 804, except that the purchase price shall be the amount of Available Cash Receipts that would otherwise have been distributed to the Managing Partner, if the Event of Default had not occurred, during the period of time that is one month for each full year that the withdrawing Managing Partner has been a Managing Partner of the Partnership. The periods of time set forth in the Preamble shall set forth the commencement of each Managing Partner's office as a Managing Partner. The Partnership shall pay the purchase price at the times set forth in Section 8.6.

(d)     The purchase price calculated pursuant to this Section 9.2 represents the total sum of money that the Partnership shall be obligated to pay in respect of the Percentage Interest of a Managing Partner who resigns or withdraws from the Partnership. A Managing Partner who resigns or withdraws from the Partnership shall have no other or further interest in or to the Partnership or any of its assets or properties.

9.3     <u>Death of Managing Partner</u>. A Managing Partner who dies while holding the office of Managing Partner shall be treated, and the Partnership shall purchase the Percentage Interest of such Managing Partner as if such Managing Partner had withdrawn from the Partnership.

9.4    <u>Disability of Managing Partner</u>. A Managing Partner who becomes Disabled while holding the office of Managing Partner shall be treated, and the Partnership shall purchase the Percentage Interest of Disabled Partner, as if such Disabled Partner had withdrawn from the Partnership.

9.5    <u>Resignation of Managing Partner</u>. A Managing Partner may resign such Managing Partner's office as a Managing Partner of the Partnership. Notice of resignation shall be given to each other Managing Partner or, if no other Managing Partner remains, to all of the Limited Partners. Upon resignation, a resigning Managing Partner shall thereupon and thereafter have no further right to participate in the management of the business of the Partnership. Such a resigning Managing Partner shall thereafter have the same rights and responsibilities to the Partnership and under this Partnership Agreement as a Limited Partner, except that such a resigning Managing Partner (or a Managing Partner who is deemed to have resigned as a Managing Partner) shall not participate in a decision to continue the Partnership under any of the circumstances set forth in Section 9.4.

9.6    <u>Leaves of Absence</u>. A Managing Partner who has been a Managing Partner for at least five years may elect to take a leave of absence from the Partnership for missionary service, for medical purposes or for other reasons approved by the Managing Partners, and for periods of time approved by the Managing Partners. Unless otherwise determined by the Managing Partners, a leave of absence for reasons other than missionary service or medical reasons (a so-called "sabbatical leave") may not exceed six months in length. A Managing Partner who is on a leave of absence may continue to hold office as a Managing Partner, if able to do so due to health and otherwise. Unless otherwise determined by the Managing Partners, a Managing Partner who is on a leave of absence shall not share in other distributions of Available Cash Receipts during the period of a leave of absence, but may be paid a salary or other fixed monthly draw during the period of the leave of absence, as determined by the Managing Partners.

9.7    <u>Continuation of the Partnership</u>. Notwithstanding, the provisions of Section 9.1, the death, disability, bankruptcy, or withdrawal of a Managing Partner shall not dissolve the Partnership if within sixty (60) days after the occurrence of such event any remaining Managing Partner or, if no Managing Partner remains, Limited Partners owing a majority of the Percentage Interests owned by all Limited Partners (not taking into account a Percentage Interest held by a Managing Partner who has resigned or is determined to have resigned as a Managing Partner of the Partnership) elect to continue the Partnership and elect one or more Managing Partners to act as the Managing Partner of the Partnership. In the event the Partnership is continued, the Partnership shall purchase the Percentage Interest of the affected Managing Partner as if such Managing Partner had withdrawn from the Partnership with the consent of all other Managing Partners.

9.8    <u>Bankruptcy, Etc. of Limited Partners</u>. The Partnership shall not be dissolved or terminated in the event of the death, disability, bankruptcy, or withdrawal of any Limited Partner.

9.9    Dissolution Procedure. Upon the occurrence of any of the events set forth in forth in Section 9.1, above, and unless the Partnership is continued pursuant to Section 9.7, the Partnership shall be dissolved and the Managing Partners shall immediately commence to wind up and liquidate the Partnership's business. In liquidating the Partnership's business, the Managing Partners may either sell all or part of the Partnership's assets and distribute the proceeds, and/or may make distributions completely or partially in kind. The Capital Accounts of the Partners shall be adjusted to account for the operating income and deductions of the Partnership for the taxable year of the liquidation or dissolution and to account for any sales of Partnership assets, in the manner provided in Sections 4.1 and 4.4 of this Agreement. In the event that some or all of the Partnership's assets are not sold, the Managing Partners shall determine the fair market value of the unsold assets, and the gain or loss that would have been realized if the assets had then been sold shall be determined, and the Capital Accounts of the Partners shall be adjusted accordingly. Following the adjustment of Capital Accounts as provided in this Section 9.9, the assets or proceeds derived therefrom, to the extent sufficient shall be applied and distributed in the following order:

(a)    To the payment of creditors, in order of priority provided by law, except for any claim of any Partner or for compensation or reimbursement of costs or expenses advanced by the Partners, any claim of a Partner on account of loans made to the Partnership or an interest in the Partnership, and any claim of a secured creditor that will be assumed or otherwise transferred upon the liquidation or distribution of the Partnership's assets.

(b) To the repayment, pro rata in proportion to balances owing, of any amounts loaned to the Partnership by any Partner pursuant to the provisions of this Agreement, plus any accrued and unpaid interest thereon.

(c) To the Partners, pro rata in proportion to their Percentage Interests, in repayment of the positive balances, if any, in their Capital Accounts, until the positive balance, if any, in the capital account of each Partner has been reduced to zero.

(d) To the Partners, pro rata in proportion to amounts owed, in reimbursement of costs and expenses incurred and advanced and in payment of compensation earned or accrued, as provided in Section 5.3.

(e) To the Partners in proportion to their respective Percentage Interests.

Distributions described in this Section 9.9 shall be made not later than the end of the taxable year during which the liquidation occurs or, if later, within ninety (90) days after the date of the liquidation.

9.10    Negative Capital Account Restoration. If, following the distributions provided in Section 9.9, any Partner has a deficit Capital Account balance, such Partner shall be required to contribute cash to the Partnership in the amount of the deficit. Any cash so contributed to the Partnership shall be applied to pay Partnership creditors, or shall be distributed to the other Partners, pro rata, in proportion to their positive Capital Account balances. Any contribution that is required to be made by reason of this Section 9.10 shall be made not later than the end of the

taxable year during which the Partnership is liquidated or, if later, within ninety (90) days after the date of the liquidation.

## ARTICLE X
### Transfer of Partnership Interests; Involuntary Redemption

10.1   Transfer of Interest of Managing Partners. The Partnership Interest of a Managing Partner, as such, may not be assigned or transferred without the prior written consent of each other Managing Partner, which consent may be granted or withheld by a Managing Partner in such Managing Partner's sole and absolute discretion.

10.2   Transfer of Interest of Limited Partners. The Partnership Interest of a Limited Partner may not be assigned or transferred, in whole or in part, without the prior written consent of all Managing Partners, which consent may be granted or withheld by a Managing Partner in such Managing Partner's sole and absolute discretion.

10.3   Substituted Limited Partner. No assignee of the whole or any portion of a partner's Percentage Interest shall become a substituted Partner in the place of the assignor unless the following additional conditions are satisfied:

(a)   The duly executed assignment setting forth the intention of the assignor that the assignee becomes a substituted Limited Partner shall have been filed with the Managing Partners.

(b)   The assignee shall have executed and delivered to the Managing Partners such instruments and other documents as the Managing Partners may deem necessary or desirable to effect such substitution, including a power of attorney similar in form and substance to that contained in Article XII of this Agreement and a written acceptance and adoption by the assignee of all of the other provisions of this Agreement.

(c)   Each Managing Partner consents in writing to the assignee becoming a substitute Partner, such consent to be within the sole and absolute discretion of each Managing Partner.

10.4   Status of Assignee or Substituted Limited Partner. Any person who acquires a Percentage Interest or is admitted to the Partnership as a substituted ,Partner shall be subject to and shall be bound by all provisions of this Agreement as if originally a party to this Agreement.

10.5   Economic Allocation on Assignment. In the event of an assignment of a Partner's Percentage Interest in the Partnership, the Partnership's net profits or net losses allocable to the interest assigned for the taxable year in which the assignment occurs shall be apportioned between the assignor and the assignee on the basis of the number of days in such year that fall before and including the effective date of the assignment and the number of days in such year that fall after the effective date of the assignment, without regard to the receipt of any distribution that may have been made with respect to such Percentage Interest.

10.6    <u>No Termination of Partnership</u>. Notwithstanding the provisions of this Article X, no assignment or transfer of a Percentage Interest shall be permitted hereunder without the express written consent of each Managing Partner if the proposed assignment or transfer, when aggregated with all other transfers or assignments of Percentage Interests during the twelve-month period ending on the date of the proposed assignment or transfer, would result in a transfer or assignment of more than forty-nine percent (49%) of the Percentage Interests in the Partnership. Any purported transfer or assignment made in violation of this Section shall be void and of no effect.

10.7    <u>Purported Assignments and Transfers</u>. Any purported transfer or assignment of a Percentage Interest made in violation of the provisions of this Article X shall be void and of no effect whatsoever.

10.8    <u>Redemption of Percentage Interest of Partner</u>. Notwithstanding any other provision hereof, or any Allocation Agreement or other agreement heretofore or hereafter entered into by the parties, the Partnership by action of Managing Partners owning at least a majority of the Percentage Interests shall have the right and option to redeem the Percentage Interest of a Managing Partner who is not a Founding Partner or of a Limited Partner at any time. Said redemption may be accomplished by notice to the Partner stating that the Partner's Percentage Interest is redeemed, accompanied by payment of the redemption price herein set forth. The redemption price shall be calculated in the manner set forth in Article VIII or Article IX, as if the subject Partner had elected to resign or withdraw from the Partnership. Upon the giving of said notice as aforesaid, the Limited Partner shall be treated for all purposes hereof as having sold such Partner's Percentage Interest to the Partnership on the date of the aforementioned notice.

## ARTICLE XI
## Amendments; Meetings

11.1 <u>Amendment of Limited Partnership Agreement</u>.

(a)    This Agreement may be amended only by written consent of Managing Partners who own a majority of the Percentage Interests owned by all Managing Partners and, in addition, with the approval of each Founding Partner.

(b)    Notwithstanding the provisions of subsection (a), above, no amendment shall change the Partnership to any form of business other than a registered limited liability partnership, change the term of the Partnership, change the limited liability of the Partners, or deprive the Managing Partners of compensation or reimbursement of expenses to which they are otherwise entitled, without the prior written consent of all Managing Partners and of Limited Partners owning a majority of the Percentage Interests owned by all Limited Partners.

(c)    In the event that this Agreement is amended, the Managing Partners shall amend any and all registrations of the Partnership previously filed by the Partnership to reflect such change if they determine that such amendment is necessary under the laws of the State of Nevada.

11.2    Meetings. Meetings of the Partnership may be called at any time by any Managing Partner. No Limited Partner shall have any right or authority to call any meeting of the Partnership for any purpose.

## ARTICLE XII
## Power of Attorney

12.1    Creation of Power. Each Limited Partner, by his execution of this Agreement or a counterpart hereof, hereby constitutes and appoints each of the Managing Partners as his attorney-in-fact with full power and authority to act on such Limited Partner's behalf and in his name for the purpose of executing, acknowledging, swearing to, filing and recording.

(a)    A certificate of limited partnership, a certificate of doing business under an assumed name, and any other certificates or instruments the filing of which by the Partnership or the Partners may be necessary or appropriate under the laws of the State of Nevada or any other jurisdiction the laws of which may apply to the Partnership.

(b)    A certificate of cancellation of the partnership and such other instruments or documents as may be deemed necessary or desirable by the Managing Partners upon termination of the Partnership;

(c) Any and all amendments to the instruments described in subsections (a) and (b), above, to be filed, or that are consistent with this Agreement (including, without limitation, any amendments admitting or substituting owners of Percentage Interests as Limited Partners), or have been approved by the Partners or any of them pursuant to Section 11.1, or have been otherwise authorized by the Partner or Partners to whom the amendment relates;

(d) Any documents that may be required to effect the continuation of the term of the Partnership, the admission of an additional or substituted Limited Partner, or the dissolution and termination of the Partnership, provided that such continuation, admission, or dissolution and termination are consistent with the terms of this Agreement;

(e) Any and all other instruments as may be deemed necessary or desirable by the Managing Partners to carry out fully the provisions of this Agreement in accordance with its terms;

(f) Any and all such purchase agreements, deeds, mortgages, assignments, transfer documents, trust agreements, affidavits, or other documents or instruments that may be deemed necessary or desirable by the Managing Partners to effect the acquisition, construction, ownership, operation, leasing, sale or disposition of any Property in which the Partnership has or may have an interest; and

(g) Any and all such other documents and instruments as may be deemed necessary or desirable by the Managing Partners to carry out the transactions contemplated by this Agreement

that are of an inconsequential nature and do not adversely affect the rights of the Partners in any material respect.

12.2    <u>Nature of Power of Attorney</u>. The power of attorney created hereby:

(a)    Shall be deemed to be coupled with an interest, shall be irrevocable, and shall survive the death, disability, bankruptcy, dissolution, or insanity of the Limited Partners;

(b)    Shall survive the delivery of an assignment by a Limited Partner of the whole or any portion of his Percentage Interest; except where the assignee has been approved by the Managing Partners for admission to the Partnership as a substituted Limited Partner, and in any event, this power of attorney shall survive the delivery of such assignment for the sole purpose of enabling the Managing Partners to execute, acknowledge, swear to, file, and record any instruments necessary to effect such substitution; and

(c)    May be exercised for each Limited Partner by listing all of the Limited Partners executing any document or instrument with a single signature of a Managing Partner as attorney-in-fact for all of such Limited Partners; provided that this method of exercising the power shall not preclude the use of other methods.

**ARTICLE XIII**
**Miscellaneous**

13.1 <u>Notices</u>

(a)    All notices, demands or requests provided for or permitted to be given pursuant to this Agreement must be in writing. All notices, demands and requests to be sent to any Partner or any permitted assignee of the Percentage Interest of any Partner hereunder shall be deemed to have been properly given or served when deposited in the United States mail, addressed to the Partner, postage prepaid and registered or certified with return receipt requested, at the address indicated below the name of each Partner on the signature page of this Agreement.

(b)    Notwithstanding the fact that all notices, demands and requests shall be effective upon being deposited in the United States mail, the time period in which a response to any such notice, demand or request must be given shall commence to run from the date of receipt by the addressee, as indicated on the return receipt of the notice, demand or request.

(c)    By giving to each other Partner at least fifteen (15) days prior written notice, the Partners and their respective successors and assigns shall have the right from time to time and at any time during the term of this Agreement to change their addresses and to specify any other address within the United States of America.

(d)    No transferee of any Percentage Interest (regardless of whether the transfer was permitted by this Agreement) shall be entitled to receive a notice independently of the notice sent to the Partner making the transfer. A notice sent or given to a Partner shall be deemed to have been sent and given to all transferees of the Partner.

(e)    All payments to be made to any Partner pursuant to this Agreement shall be made at the Partner's address indicated below the name of the Partner or the signature page of this Agreement.

13.2    Titles and Captions. All Article and Section titles and captions in this Agreement are for convenience or reference only, and shall not be deemed part of this Agreement, and in no way define, limit, extend or describe the scope or intent of any provisions hereof.

13.3    Pronouns and Plurals. Whenever the context may require, any pronoun used herein shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns, pronouns and verbs shall include the plural, and vice versa.

13.4    Further Action. The Partners shall execute and deliver all documents, provide all information, and take or forebear from all such action as may be necessary or appropriate to achieve the purposes of this Agreement.

13.5    Applicable Law. This Agreement shall be construed in accordance with and shall be governed by the laws of the State of Nevada.

13.6    Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of the Partners and their respective heirs, executors, administrators, successors, legal representatives and assigns; provided that this provision shall not be construed as permitting assignment or substitution except strictly in accordance with the applicable provisions of this Agreement.

13.7    Integration. This Agreement constitutes the entire agreement among the parties pertaining to the subject matter hereof, and supersedes all prior agreements and understandings pertaining thereto. No covenant, representation or condition not expressed in this Agreement shall affect or be deemed to interpret, change or restrict the express provisions hereof.

13.8    Creditors. None of the provisions of this Agreement shall be for the benefit of or shall be enforceable by any creditors of the Partnership or of any Partner.

13.9    Waiver. No failure by any party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or of such or any other covenant, agreement, term or condition. Any Partner by notice given pursuant to Section 13.1 may, but shall be under no obligation to, waive any of his rights or any conditions to his obligations hereunder, or any duty, obligation or covenant of any other Partner. No waiver shall affect or alter the remainder of this Agreement, but each and every other covenant, agreement, term and condition hereof shall continue in full force and effect with respect to any other then existing or subsequently occurring breach.

13.10    Rights and Remedies. The rights and remedies of the Partners hereunder shall not be mutually exclusive, and the exercise of one or more of the provisions of this Agreement shall

not preclude the exercise of any other provision. Each Partner confirms that damages at law may be an inadequate remedy for a breach or threatened breach of any provision hereof. The respective rights and obligations of the Partners hereunder shall be enforceable by specific performance, injunction or other equitable remedy, but nothing herein contained is intended to or shall limit or affect any rights at law or by statute or otherwise of any party aggrieved as against the other parties for a breach or threatened breach of any provision hereof, it being the intention of the Partners by this Section to make clear their agreement that the respective rights and obligations of the parties hereunder shall be enforceable in equity as well as at law or otherwise.

13.11  Severability. In the event that any condition, covenant or other provision herein contained is held to be invalid or void by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect any other covenant or condition herein contained. If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.

13.12  Counterparts. This Agreement may be executed in counterparts, all of which taken together shall constitute one Agreement binding on all of the parties notwithstanding that all the parties are not signatories to the original or the same counterpart. Each party shall become bound by the Agreement immediately upon affixing his signature hereto, independently of the signature of any other party.

13.13  Waiver of Partition. Each Partner hereby waives any right to partition of the Partnership property.

13.14  Exhibits. All exhibits or other documents referred to in the text of this Agreement are hereby incorporated herein by this reference.

13.15  Attorneys' Fees. In the event that the Partnership or any Partner shall enforce or attempt to enforce any provision of this Agreement (including the terms of any loan made by a Partner to the Partnership), the prevailing party in any resulting action, suit or proceeding shall be entitled to recover attorneys' fees from the other parties.

[SIGNATURES ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

"Managing Partners"

_____
R. Glen Woods

_____
John R. Erickson

_____
Brian C. Whitaker

_____
Aaron R. Maurice

"Limited Partners"

NONE

**EXHIBIT A**
**Capital Contributions of the Founding Partners**

On the Effective Date of the amendment and restatement of the Partnership Agreement hereby made, the Founding Partners shall contribute to the Partnership all of the assets and business of the Partnership, including cash, accounts receivable, inventory, prepaid expenses, furniture, fixtures and equipment and other fixed assets as the same may exist, subject to all of the liabilities of the Partnership, accrued or otherwise.

The Partners hereby agree that the value of the property referred to in the foregoing paragraph is Eight Hundred Thousand Dollars ($800,000). Accordingly, each Founding Partner shall have a capital account balance for purposes of the Partnership Agreement of Four Hundred Thousand Dollars ($400,000) as of the Effective Date hereof.

**EXHIBIT B**
**Capital Contributions of the Limited Partners**


None


G:\Aaron\W&E Agreement.doc