Andrew Platt, Pro Se
1827 W 650 N
Springville, Utah 84663
702.534.1560
notice@plattmosphere.com
*Debtor pro se*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br><br>ANDREW B. PLATT and RUTH ANN PLATT,<br><br>Debtor(s) | Case No.: 19-17282-gs<br>Chapter 7 |
| WOODS & ERICKSON, LLP, a Nevada Limited Liability Partnership d/b/a WOODS ERICKSON & WHITAKER LLP,<br><br>Plaintiff(s)<br><br>vs<br><br>ANDREW B. PLATT, an individual,<br><br>Defendant. | Adversary Proceeding: 19-01125-gs |

**Defendant's Statement of Law as to Issues Raised by the Appellate Panel**

In vacating and remanding the Bankruptcy Court's Judgment [ECF 87], the BAP's Memorandum [BAP docket 28] requires that the Bankruptcy Court take three different kinds of additional actions—in a manner consistent with the BAP's analysis—to correct the Judgment's defects: the BAP raised procedural issues, legal errors, and issues with facts—either the lack of findings or because certain positions were irreconcilable. While some of these corrections might be satisfied by providing more detail, in other key areas, the BAP indicates that the Judgment has impossible flaws such that the Court must now reach a different conclusion.

1

|  | Procedural | Legal | Factual |
|---|:---:|:---:|:---:|
| 1. Non-consolidation (Memorandum, 2 & 4) | ✓ | | |
| 2. Amendment as to larceny (Memorandum, 3) | ✓ | | |
| 3. Finality (Memorandum, 3–4) | | ✓ | |
| 4. Basis for non-dischargeability (Memorandum, 4–5) | | ✓ | |
| 5. Partnership status (Memorandum, 5 & 6) | | ✓ | ✓ |
| 6. Trust at issue (Memorandum, 5–6) | | ✓ | |
| 7. State of mind (Memorandum, 6) | | | ✓ |
| 8. Calculation (Memorandum, 6) | | | ✓ |

## I.   Background

In April 2019, the Managing Partner of the Firm and leader of the Firm's most profitable practice group, Glen Woods, passed away. The surviving partners sued Wood's estate claiming the right to take control of the Firm without buying out his 59%+ partnership interest. After the surviving partners had rejected Platt's admonition that they refrain from using confidential client records for personal ends and because of their resulting threat to withhold compensation, Platt was forced to resign his employment. Ostensibly in connection with the suit to take Wood's interest in the Firm, the Firm sued Platt and an LLC owned by Platt alleging claims including conspiracy with Woods, falsification of documents, taking legal forms, breach of fiduciary duty and conversion of property. Platt admitted that, as part of the emotion of being forced out of the Firm he did ill-advised and even wrongful things, but that even though the Firm kept trying to confuse the issues, these actions were unconnected to the damages that the Firm alleged. As to work done outside the Firm, Platt answered that amounts he received were either non-legal work or side work authorized consistent with prior practice at the Firm. Platt further counterclaimed including for wages withheld and damages from misclassification. Trying to ramp up a practice

while waging the costly State Court case against the Firm bankrupted Platt because he was too far in arrears with his attorney to proceed to trial.

The Firm objected to discharge. Until just before the trial on dischargeability, including throughout discovery and during the settlement conference, the only bases for denial of discharge ever discussed were 523(a)(2)(A) false pretenses, a false representation, or actual fraud and 524(a)(4) fraud or defalcation while acting in a fiduciary capacity. The (a)(2)(A) claim was dismissed on summary judgment [ECF 74]. Plaintiff attempted to pivot in the eleventh hour when it moved for and was denied leave to amend its complaint to assert (a)(4) theories of embezzlement and larceny. Plaintiff did not prepare, and the Court did not make, any Rule 7016 pretrial order as to matters such as disputed and undisputed facts, evidence, witnesses, etc. Consistent with the denial of leave to amend, Platt's trial counsel did not call any other witnesses as to the elements of embezzlement and larceny; Platt's testimony sought mainly to rebut claims of fraud or defalcation in a fiduciary capacity as Platt had received authorization to work on limited side projects from Woods and the State of Nevada had determined Platt was an employee—not a partner.

## II. Introduction

That Platt received money outside the Firm is not in dispute. The Firm argues that the money should have been the Firm's. Platt asserts that he was allowed to earn the money maintaining that the Firm had no claim to his nonlegal work at a charter school and that he had obtained approval from the managing partner to offer limited legal services outside the Firm consistent with previous arrangements. In this adversary proceeding dealing with dischargeability, discharge is not denied if the Court disagrees with Platt's justifications—who would ever receive a discharge if existence of an underlying debt was the dischargeability standard? Discharge would be denied if Platt both owed the money and had abused (through fraud or defalcation) his fiduciary duty to the Firm in earning it. Under bankruptcy law, the duty of an employee to an employer is not the

type of fiduciary duty targeted by (a)(4). Likewise, the obligations of corporate officers and general partners—and certainly limited partners—of Nevada partnerships like the Firm do not constitute an (a)(4) type of fiduciary duty. When confronted with this rule on summary judgement, the Firm sought to pivot to two contradictory new theories—embezzlement and larceny. The Court denied leave to amend, and Platt did not bring witnesses to deal with these theories. The BAP drew attention to the legal flaws in the Judgment: not only are there errors in the analysis of the existence of a partnership, Memorandum 5–6, but also the threshold error of a larceny ruling after the Court had excluded that theory. Memorandum 3.

This Statement of Law discusses the instructions from the BAP in the sequence they appear in the Memorandum. Because the key issue in the adversary proceeding is whether Platt's actions could even rise to any grounds for denial of discharge—assuming the Firm had an interest in the fees—BAP issues 5 and 6 are the bottom-line legal and factual issues on remand.

The details of the operation of the Firm can be litigated later in the unconsolidated adversary proceeding. In light of the BAP ruling, the Bankruptcy Court should resolve the legal aspects of the dischargeability issue by (a) confirming that discharge is allowed where no (a)(4) federal fiduciary duty existed because, (b) as the BAP observed, larceny was not at issue at trial. Briefing of facts on remand will be presented later consistent with the Court's scheduling order.

### III. The procedural issues identified by the BAP are threshold matters necessary to determine scope of the Court's Remand

The first two issues identified by the BAP have profound implications on remand and deserve separate consideration. Because they bear on matters such the necessity of new trial proceedings, these first procedural questions determine the scope of the work before the Court and the parties.

**1. Unless the Court orders further proceedings, nonconsolidation means that only dischargeability is before the Court**

On page 2 of the BAP Memorandum, the BAP highlights that the Bankruptcy Court declined to consolidate the two adversary proceedings [19-01122 Docket 22] but then entered an order—not only as to dischargeability (19-01125)—but also liability (19-01122). This is problematic not just because Platt only presented facts relevant to dischargeability (i.e. not those relevant to his counterclaims) but because it further suggests that the Bankruptcy Court lost sight of what exactly were the elements of the dischargeability case before it.

There is no other way to interpret nonconsolidation: the Court had determined to hear dischargeability separate from liability. While there are certainly decisions holding that bankruptcy courts may render monetary judgments in an amount certain when they are ruling on dischargeability, *e.g.*, *In re Kennedy*, 108 F.3d 1015, 1017 (9th Cir. 1997), those decisions are not in cases where the court has already declined consolidation and the court has thereby determined to reserve liability issues to a separate adversary proceeding already pending before it.

On remand, the parties cannot effectively argue issues of finality or the calculation of damages without a recognition of the BAP's concern and instructions for the Court to clarify the scope. There is a profound difference in what issues the Court needs to consider if the judgment will refer to both 19-01125 and 19-01122—the parties will tie themselves up in knots arguing separate scenarios such as how Platt may rely on matters previously produced during discovery related to his counterclaims which were not relevant to 19-01125. For example, as part of its allegations of damages, the Firm presented bills from an IT consultant both for the investigation of Platt's computer and Woods' computer in connection with the Firm's suit against Woods' estate. On the face of the invoices, it is apparent that only a fraction relate to an investigation of Platt's computer. Because these invoices relate to claims arising months or years after the facts relevant to the 19-01125 dischargeability matter, there has been no testimony justifying including invoices pertaining to Woods' computer in both the suits against Woods and Platt.

The BAP observed that the nonconsolidation decision is inconsistent with the final ruling on damages. If, on remand, the Court chooses to reverse the nonconsolidation decision, the parties should have the ability to engage the evidence that will be relevant to the 19-01122 adversary proceeding that was not relevant to the 19-01125 dischargeability proceeding. The reality that the parties would have to go outside the evidence presented at trial in order to accomplish, by briefing alone, a full argument as to damages, illustrates why the action that properly follows from the BAP's Memorandum is that only the 19-01125 dischargeability case should be before the Bankruptcy Court. If it determines to reverse its prior ruling, the Court should give notice and schedule further proceedings instead of ruling on the briefs which would have to argue all branches of what is a threshold matter.

## 2. The last-minute amendment was properly rejected, if the Court revises that order, it should schedule additional proceedings to permit adequate further briefing.

The BAP held that nondischargeability based on larceny cannot be squared with the Court's determination that larceny was not at issue. Memorandum 4, 5. Argument by the parties about how the facts do or do not support larceny will be spinning in circles such the Court should instruct the parties whether to spend space briefing this theory. As above in Section 1, guidance from the Court determines whether additional discovery and testimony are necessary, this time to establish the additional elements of the new claim. The Court should either affirm its May 5, 2021 ruling not to permit lastminute introduction of the larceny issue or, now that our backs are not collectively up against a trial date, explicitly grant leave to amend and allow both parties to address the issue.

While attempting to parry the Firm's far-ranging accusations at trial, Platt relied on the Court's order; Platt's focus was on the elements of (a)(4) defalcation in a fiduciary capacity. The elements of larceny and embezzlement are not equivalent to those of conversion in bankruptcy law—larceny requires felonious intent. *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010).

No matter how desperate Plaintiff was to pivot at the last minute, it was proper for the Court to exclude a new element. As to the elements of conversion, evidence showed there was no conversion as the Firm did not have a right to nonlegal work and, for multiple reasons including Woods' authorization, the Firm did not own the clients to whom Platt provided legal services outside the Firm. But going from conversion to add embezzlement's elements or larceny's felonious intent, introduces additional burdens of proof. The BAP identified that the Judgment did not identify how these elements could be met. The BAP appears to have been influenced by briefing that Platt certainly could have no felonious intent where the Firm allowed side work and Platt made a specific agreement with the Managing Partner about limitations on having certain clients outside the Firm. At trial, Platt relied on the trial court's order, Platt did not call witnesses to give evidence about the general culture or conspicuous examples of legal work other attorneys performed outside the Firm.

As indicated by the Firm's own request for leave to amend, claims of larceny and embezzlement were not inherent in the Complaint. The Court was not at liberty, two weeks before trial, to substitute new theories for those that were the subject of discovery, briefing, and settlement negotiations. FRBP 4007(c); *Keith v. Exch. Bank (In re Keith)*, 2013 Bankr. LEXIS 4686, at *25 (B.A.P. 9th Cir. Oct. 3, 2013); *Willms v. Sanderson*, 723 F.3d 1094 (9th Cir. 2013).

The BAP determined that because of the denial of leave to amend, the issue in the dischargeability trial was fiduciary duty and not larceny. Without guidance from the Court whether it intends to leave the Complaint unamended or not, the parties will spend space arguing larceny unnecessarily. If the Court determines to allow amendment, it should enter a pretrial order, probably permit new discovery, and schedule additional proceedings to allow the evidence to be admitted to the record.

### IV. Legal issues

As the BAP Memorandum illustrates, the legal questions have profound downstream implications—not only are questions like finality only pertinent if the Court wishes to consolidate—but the BAP explicitly stated that question of calculation turned on the Court's "partnership finding"

**3. The Judgment was intended to be a final adjudication**

Because the Judgment ignored the law of case—the prior determination to keep dischargeability separate from questions of liability—it was in error; but the Judgment purported to be final. Adversary proceedings are generally discrete final determinations. *In re Belli*, 268 B.R. 851, 855 (B.A.P. 9th Cir. 2001). Thus, for purposes of Fed. R. Civ. Proc. 54(b), the problem was not that the Judgment adjudicated "fewer than all the claims or the rights and liabilities of fewer than all the parties," *Id.*, for reasons argued in Sections 1 and 2, it purported to adjudicate *more* than the claims before it. For this reason the BAP had jurisdiction.

On remand, in redressing the determination based on the BAP's instructions, the Court should make its order on the issue before it: dischargeabilty and that order will comport with the finality requirements of *Belli*. If the determination is not restricted to dischargeability, then it can only be final if it hears all the claims of the parties as asserted in the unconsolidated State Court matter.

**4. However the Court clarifies which theories are at issue, the Court should find that Platt did not commit defalcation, larceny, or embezzlement.**

The BAP did not hide its frustration with the legal flaws of the Judgment, first stating that the basis was indiscernible: "we cannot tell whether the bankruptcy court found nondischargeability based on breach of fiduciary duty or larceny or both," Memorandum 4, and then indicated that neither theory was consistent with the facts and law. Memorandum 4–5.

8

Platt was simply an employee and was entitled to keep the amounts now claimed by the Firm under applicable law. But even if he were a partner and owed his outside collections to the Firm, the fiduciary duties of a partner (or employee) are not of the type to which (a)(4) applies. *See Ragsdale v. Haller,* 780 F .2d 794, 796 (9th Cir. 1986) and *In re Short*, 818 F.2d 693, 695 (9th Cir. 1987) discussed in Section 6. Likewise, the firm cannot meet its burden of proof on larceny because Platt acted strictly within the limits set by the Managing Partner, he cannot have acted with felonious intent.

Larceny is a felonious taking of another's personal property with intent to convert it or deprive the owner of the same. *In re Jenkins*, 2015 Bankr. LEXIS 578, at *11–16 (B.A.P. 9th Cir. Feb. 20, 2015). "Felonious" is defined as proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse of color of right. *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir. 2010).

The larceny in *Ormsby* was the taking of a proprietary database (or, more properly, "title plants") from the creditor which were used for Mr. Ormby's enrichment. The value underlying the transactions was wholly due to the creditor's work in building the title plants. When Mr. Ormsby colluded to obtain them, he was in a real sense giving his customers the creditor's property. In Platt's case, the fees, clients, and business opportunities are substantially distinguishable because the client made an independent choice of with whom each would create an attorney-client relations with and whom to pay. With an out of state accountant as the referral source, WEW had no connection to these new projects from these clients. Platt conducted himself strictly in accordance with the limits of the permission he received from the Firm's managing partner using time to which the Firm had no claim. Just as with the side firm of Weintraub Woods and Platt LLP which Glen Woods and Platt had formed in 2013, (1) the work Platt performed was from the single explicitly agreed referral source, (2) the office manager knew about and discussed matters with Platt and Woods, (3) both the new firm's engagement letter and the Firm's engagement letters referenced the other firm.

Under Ninth Circuit precedent, Platt was entitled to the fees. But equally important for the legal issues remanded from the BAP, there can be no felonious intent even if Platt's justifications are insufficient. The limits on his side work and the fact the new firm was disclosed to all client of the Firm in engagement letters are examples demonstrating that he was acting with "color of right."

**5. Platt was not a partner of the Firm under Nevada law**

The BAP Memorandum observed that denying discharge on the fiduciary duty of a partner leaves unreconcilable flaws. Memorandum 5, 6. The Judgment awarded damages with respect to a time the Firm does not even allege Platt was a partner. Likewise, as discussed below in connection with the BAP's sixth point, the source of duties is contingent on the identity of the partnership analyzed.

Platt was never admitted by any writing such as a Partnership Agreement for the Firm. Platt was never paid any profit share by the Firm. He was not treated as a partner in any way other than being referred to as a "junior partner" or "limited partner" on the Firm website and receiving K1s (which the taxing authority has determined were invalid). Thus, the BAP observes that "the record supports a determination that Platt was a partner at some point in time," but the BAP questions what partnership that would have been. Plaintiff must indicate whether it was the Firm, formed in 1995, or some new partnership formed in January 2016. This is significant because the Nevada Department of Taxation concluded that Platt was not a partner of the Firm, but an employee, and in Nevada, the determination of the agency is dispositive where the Firm waived further contest of the determination. NRS 612.245 (an unappealed determination "is conclusive as to the facts and the determination"). Identifying a theory for creation of a partnership or admission will determine what partnership should have provided Platt with information due a partner in order to determine his profit share.

10

In NRS 87 partnerships, the division of profits is fundamental to the existence of a partnership and of whether a person acted as and was treated as a partner. Where there was zero evidence of any division of profit, the Court should apply Nevada partnership law that Platt was not a Partner of the 1995 Firm. As NRS 87.060 provides, "a partnership is an association of two or more persons to carry on as co-owners a business for profit, and includes a registered limited-liability partnership." Where there was a compensation system based on collections—without any adjustment for cost of goods or overhead—the Firm cannot meet the statute's definitional requirement that there was ever a division of the profits of any partnership.

Plaintiff must choose its theory as to which partnership Platt was admitted and what profit interest he received (or is now owed). Plaintiffs have previously argued that Platt was admitted to the Firm by estoppel under NRS 87.160. This provision only creates liability for the benefit of third parties and is thus clearly a theory of liability necessary exactly because there has <u>not</u> been admission—rather than a backdoor theory of alternate admission. The language of NRS 87.160(1)(a) is that there is liability "as though the person were an actual member of the partnership," <u>not</u>, for example, "because the person is therefore an actual partner."

Without receiving a profit interest, Platt was not an NRS 87 partner of the Firm. Any proposed statement of law must identify a partnership and establish a theory of admission which does not contradict the BAP's instructions and the facts of the case.

**6. There was no statutory or express trust under Nevada partnership law**

The BAP determined that (a)(4) fiduciaries do not exist under the partnership act applicable to partnerships formed in 1995. Memorandum 5. The BAP saw that there may be way for partnerships created after 2006, *Id.*, but this would be an issue of first impression and no Nevada state court or any federal court has found that a Nevada partner (let alone a limited partner) owes a federal fiduciary duty in in the meaning of (a)(4). The Firm was formed in 1995 and was governed by the Nevada Uniform Partnership Act, NRS 87.010 to 87.430. Thus, if Platt was a

11

partner <u>and</u> the approval of the management partner did not entitle him to collect fees for side work, Platt cannot be denied discharge based on breach of a fiduciary duty because there is no express or technical trust. Federal law distinguishes an ongoing express or technical trust relationship from an obligation which springs into existence when certain tripwires are crossed.

The Ninth Circuit has long held that the status of fiduciary is particular to federal law rather than state law. *E.g.*, *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003). Specifically, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996). Officers and partners are not fiduciaries of the type implicating discharge. *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir. 1986). Only where the applicable state law establishes a duty as trustee for all purposes have partners in those states been held to be fiduciaries for the exception to discharge. *In re Short*, 818 F.2d 693, 695 (9th Cir. 1987) (finding that Washington Courts had created duties beyond the statute where a managing partner had such heightened general duties).

Where a special trust relationship is not inherent in the relationship, but is created as a result of a violation of a duty (called an *ex maleficio* trust), there is no federal fiduciary duty. As contemplated by *Short*, fiduciary duty is not a matter of job title, it is matter of whether the abuse of a special trust created the debt. The BAP forecloses the existence of any (a)(4) fiduciary duty arising from the 1995 partnership; if a new partnership was formed, there must be evidence of what the scope of the partnership business would have been.

V. **Factual issues**

**7. Platt did not act with the state of mind necessary for defalcation**

The BAP observed that, contrary to the arguments of <u>both</u> Platt and the Firm, defalcation does require proof of wrongful conduct when the alleged debt is created under the Supreme Court's decision in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). This state of mind

may be either through (a) bad faith, moral turpitude, or other immoral conduct, or (b) through reckless conduct such as willful blindness. *Id.* at 274. For purposes of (a)(4) defalcation, the *Bullock* state of mind seems inherent in the jurisprudence on why failure of a fiduciary duty is grounds for denial of discharge—that the debt was created by a violation of the special position of power such that abuse of that special relationship should not be discharged through bankruptcy. *Ragsdale v. Haller,* 780 F .2d 794, 796 (9th Cir. 1986). As the Supreme Court held, the reckless state of mind constituting defalcation, "involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Bullock,* 569 U.S. at 274, emphasis in source. This is an unsurprising reinforcement of the long-standing principle that not every duty is a (a)(4) federal fiduciary duty.

As to the first half of the *Bullock* standard, because Platt sought permission from the Firm's managing partner and strictly followed the pre-existing pattern they had agreed for side work (as summarized in Section 4, above), Platt was not acting with wrongful intent. Likewise, as to the second element of the *Bullock* state of mind standard, Platt was not reckless because, at minimum, he was in line with common practice there. Setting aside the argument of whether Platt was a limited partner or an employee and what duty might attach, and setting aside whether Platt had reason to know whether open discussion with the managing partner discharged his duty to the Firm, Platt was not reckless or blind. He was <u>more</u> circumspect that other professional at the Firm in limiting the scope of his side work—there was certainly no gross deviation from the conduct of other attorneys.

**8. Any calculation of damages must comport both with a reasonable look at the facts and with the legal theory of the determination.**

The BAP's Memorandum pointed out that the calculation of damages was inconsistent. Memorandum 6. If the theory of the Judgment was based on partnership law, the damages could not arise before that relationship was even alleged to have existed. The Judgment disregarded at least two dimensions of the evidence. First, the amounts paid by Renaissance were not legal

13

work and were performed years before the Firm alleges Platt became a partner. Second, the figure used to represent the damages from Platt's legal work, double counted by including both amounts invoiced and the amounts paid. The total ignores that Platt would have been entitled to fifty percent of his collections (and that he would not have borne the pass-through expenses). Not only is there no offset for Platt's counterclaims, but the Firm's maximum damages on the face of the evidence submitted would $34,495.16.

Based on the Court's prior determination not to consolidate proceedings, these issues of calculating damages were not ripe to be fully litigated, but even on the face of the documents, it is clear that the calculation in the Judgment was erroneous.

## VI.    Conclusion

The instructions from the BAP require the correction of interlocking issues. The Court should first clarify the procedural issues from which flow the scope of the remaining legal and factual questions. If the Court preserves the scope consistent with its orders (prior to the Judgment), the Firm's counsel has already admitted on the record that, because employees or limited partners do not have an (a)(4) fiduciary duty, this would be tantamount to summary judgment—and no new proceedings would be necessary. However, if the Court expands the scope beyond that of its orders before trial, additional proceedings will likely be necessary to address the new theories and the expanded scope so that Platt can demonstrate that even under the new theories, there is no basis for denial of discharge.

Respectfully submitted

Signature:     /s/ Andrew Platt
               Andrew Platt, Pro Se
               1827 W 650 N
               Springville, Utah 84663
               702.534.1560
               notice@plattmosphere.com

**Certificate of Service**

I certify that on 16 September 2022, I electronically filed the foregoing document with the Clerk of the Court for the Bankruptcy Court for the District of Nevada by using the CM/ECF system.

I certify that all parties of record to this appeal either are registered CM/ECF users, or have registered for electronic notice, or have consented in writing to electron service, and that service will be accomplished through the CM/ECF system.

Signature:     /s/ Andrew Platt