

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
November 07, 2023

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ANDREW B. PLATT and RUTH ANN PLATT,<br><br>        Debtor(s). | Case No.: 19-17282-gs<br>Chapter 7 |
| WOODS and ERICKSON, LLP, *A Nevada Limited Liability Partnership dba* WOODS ERICKSON AND WHITAKER, LLP,<br><br>        Plaintiff(s),<br><br>    v.<br><br>ANDREW B. PLATT, *An Individual,*<br><br>        Defendant(s). | Adv. Proc. No. 19-01125-gs<br><br><u>Oral Argument</u><br>DATE:  July 7, 2023<br>TIME:   9:30 a.m. |

### MEMORANDUM DECISION RE: 11 U.S.C. § 523(a)(4)
### (Fraud or defalcation while acting in a fiduciary capacity)

The Ninth Circuit Bankruptcy Appellate Panel (BAP) vacated this court's prior judgment denying debtor and defendant Andrew B. Platt's discharge of his debt owed to his former law firm, plaintiff Woods & Erickson, LLP (Woods Erickson or the Firm) under 11 U.S.C. § 523(a)(4). The BAP remanded the case for further explanation and findings supporting its judgment. The court has previously addressed Woods Erickson's claim for larceny in a separate

1

memorandum. This memorandum is directed to the claim for denial of the dischargeability of the debt under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity. The BAP remanded the case for further proceedings, including clarification of facts surrounding the formation of the partnership involving Platt and his state of mind.

On remand, the parties have provided further briefing and argument on the Firm's claim for fraud or defalcation while acting in a fiduciary capacity. The court has conducted a detailed review of the record, the supplemental briefing and arguments presented. While the record establishes that Platt is liable for breaches of his fiduciary duties owed to Woods Erickson, neither applicable statutory or common law imposed an express or technical trust over the partnership property prior to the breaches of those duties. Accordingly, Woods Erickson has not proven the essential elements of its § 523(a)(4) claim.

## Background

### A. The Firm

Woods Erickson was founded on January 1, 1995, by Glen Woods and John Erickson. Adv. ECF No. 202-5 at 4:7-8. On February 12, 2007, the original agreement of limited liability partnership of Woods & Erickson LLP was amended by the Amended and Restated Limited Liability Partnership Agreement (2007 Partnership Agreement). Trial Exhibit M, Adv. ECF No. 202-70. The 2007 Partnership Agreement recognized the addition of Brian Whitaker and Aaron Maurice to the partnership. *Id.* at 2. The 2007 Partnership Agreement changed the name of the firm to Woods Erickson Whitaker & Maurice LLP, and stated in Section 1.1:

> Formation. The Managing Partners and the Limited Partners (herein collectively referred to as the "Partners") hereby amend and restate in their entirety the provisions of the existing agreement of limited liability partnership of Woods & Erickson LLP (the "Partnership") pursuant to the provisions of the Nevada Revised Statutes Sections 87.440 et. seq., which law shall govern the rights and

2

obligations of the parties hereto, except as may be set forth elsewhere herein to the contrary.[1]

*Id.*

The partnership agreement was further amended on August 12, 2013. Trial Exhibit N, Adv. ECF No. 202-71. Erickson took a three-year leave of absence and Maurice withdrew from the partnership. *Id.* at 2. After the 2013 amendment, the partnership interests were comprised of: R. Glen Woods – 59%; John R. Erickson – 4%; Brian C. Whitaker – 37%; Limited Partners – 0%. *Id.* at 3.

### B. Platt's Employment with Woods Erickson

Platt began working for Woods Erickson in 2007 as an associate attorney. Adv. ECF No. 202-6 at 35:1-3. He worked with the firm for nearly 11 years until 2018. *Id.* at 34:22-25.

In 2015, Platt began talks with Glen Woods about becoming a partner. Adv. ECF No. 202-6 at 195:17-196:5. The discussion began when Glen Woods approached Whitaker about making his son, Kent Woods, a limited partner.[2] Adv. ECF No. 202-3 at 76:5-77:9. At the time, Erickson was away on a three-year mission trip. Adv. ECF No. 202-5 at 54:5-55:4. According to Whitaker's testimony at trial, Woods and Whitaker agreed that both Platt and Kent Woods would become limited partners as of January 1, 2016. *Id*. at 77:16-19. Woods Erickson commonly used the position of limited partner as a transition prior to becoming a full equity partner at the Firm. Adv. ECF 202-3 at 39:25-41:15. Limited partners did not receive an equity interest in the Firm. Instead, limited partners were compensated by receiving fifty percent of the revenue they generated.[3] *Id*. at 40:6-10.

---

[1] NRS 87.440-87.540 contain Nevada's statutes governing the registration of limited liability partnerships. The statutes do not address the scope of a partner's fiduciary duties.

[2] The court shall use the first name for Glen and Kent Woods to avoid confusion. No disrespect is intended.

[3] The exact meaning of a limited partner in the Woods Erickson limited liability partnership is unclear. The parties do not focus on any distinctions between a general partner, a limited liability partner and a limited partner.

On December 12, 2015, Platt sent an email to Glen entitled "Andrew's transition to LP," requesting that he receive draws until April to avoid a drop in his income while he transitioned to the new compensation system. Adv. ECF No. 202-12 at 1. On December 29, 2015, Platt sent another email regarding the structure of the draws and offering his "thoughts for my transition to LP." *Id*. at 2. On January 18, 2016, Platt sent an email containing an attachment, "Admission as LP." *Id*. at 1; 4-6. This document was drafted by Platt, and titled "Agreement of Admission of Limited Partner" (2016 Agreement). *Id*. at 4. The 2016 Agreement provided as follows:

1. As of, January 1, 2016, Woods & Erickson LLP, a Nevada limited partnership (the "Firm") admits Andrew B. Platt ("Andrew" or "the Limited Partner") as a limited partner of the Firm.

2. The Limited Partner receives no percentage interest in the profits, losses, or capital of the Firm except for profits corresponding to the profit sharing rights as agreed in Schedule A as the same may be amended by the Firm from time to time.

3. The Limited Partner shall be treated for tax purposes as a partner or contractor rather than as an employee. Limited Partner is not eligible for 401(k) matching by the Firm. Limited Partner is eligible for coverage under the Firm's medical insurance benefit plan as the same may by [sic] modified by the Firm from time to time.

4. The Limited Partner may withdraw as limited partner and may be expelled from the Firm at any time without case [sic]. Unless otherwise specifically agreed in writing, the Limited Partner is not entitled to Profit Share or Equity Share (as both are defined in Schedule A) for amounts received by the firm when such Limited Partner shall not be a partner.

*Id*. Schedule A, Part A, entitled "Profit Share," reads that it is effective as of January 1, 2016, and further provides:

1. The Firm shall pay to Limited Partner fifty percent of amounts received by the firm for hours billed to clients by the Limited Partner as such partner's "Profit Share."

2. Profit Share shall also include fifty percent of amounts received by the firm from flat fee products and services sold by the Limited Partner adjusted for (a) fee-splitting agreements with other firms and (b) time billed in delivery of such flat fee matters by other partners and employees.

3. The Firm shall pay the Profit Share on or as close to the 10th of each month as the Firm shall determine practical.

*Id*. at 5. Though never signed, Whitaker and Erickson each testified that they understood that the 2016 Agreement had been implemented, and that Platt became a limited partner as of January 2016. Adv. ECF Nos. 202-4 at 86; 202-3 at 41:18-20.

### C. Platt's Breaches of Fiduciary Duty

Woods Erickson has sought damages from Platt for breaches of his fiduciary duties relating to two different representations. Between 2012 and 2015, while Platt was still an associate with the law firm, he provided legal services to Renaissance Academy to assist it with efforts to wind down its operations. Adv. ECF No. 202-6 at 73:9-11; 76:17-19. During this time Platt was an associate with the Firm, and winding down business affairs was within the services it offered its clients. Adv. ECF No. 202-5 at 57:23-58:10. Platt originally told the Firm that he was representing Renaissance on a pro bono basis. When later questioned about the representation he stated that he had taken $2,500 in legal fees for his representation. Adv. ECF No. 202-4 at 186:5-8, 190:15-17; Adv. ECF No. 202-5 at 22:7-9, 56:5-12.[4] After Platt left the Firm in 2018, it discovered that Platt had billed Renaissance for his services and individually collected $31,815 in fees. Adv. ECF No. 202-4 at 186:22-24; Adv. ECF No. 202-5 at 57:7-18; Adv. ECF No. 202-6 at 76:2-10.

In 2017, after Platt had become a limited partner with the Firm, he formed L&S Counselors LTD (L&S) and offered legal services in competition with Woods Erickson. Adv. ECF No. 202-6 at 47:13-21, 48:17-50:21. Acting through L&S, Platt offered legal services to Firm clients including Tina Sawatzky and Jeremy Sawatzky (Trial Exhibits 19 and 20, Adv. ECF Nos. 202-25 and 202-26), Rosa Cordova (Trial Exhibit 21, Adv. ECF No. 202-27), and Farjad Fani aka Matt Johnson (Trial Exhibits 29 and 30, Adv. ECF Nos. 202-35 and 202-36). These clients were existing clients of Woods Erickson. Adv. ECF No. 202-3 at 167:9-16, 177:2-5, 202:18-20; Adv. ECF No. 202-5 at 82:11-83:16.

The parties offer differing perspectives for Platt's creation and use of L&S to provide legal services to these clients. Platt explains that Glen authorized him to provide legal services outside of Woods Erickson. Adv. ECF No. 202-7 at 5:9-6:5, 7:3-12. Platt contends that L&S was able to provide more efficient and economical legal services than Woods Erickson in certain

---

[4] Platt denies that he told the Firm he received $2,500 for services provided to Renaissance Academy. Adv. ECF No. 202-6 at 72:3-14.

situations. *See, e.g.*, Adv. ECF No. 202-7 at 14:4-10. Woods Erickson states that it was never aware that Platt was competing with the Firm through a separate entity. Adv. ECF No. 202-4 at 168:2-13; Adv. ECF No. 202-5 at 23:22-24:1. It argues that it never authorized Platt to compete with it and that Glen never had the authority to do so. Adv. ECF No. 202-4 at 171:13-17.

Glen became seriously ill in March 2018 and died on April 1, 2018. Adv. ECF No. 202-3 at 121:22-122:8; 126:8-11. While attempting to provide coverage of his work obligations, Erickson and Whittaker discovered that Glen had taken fees for trustee services he had individually provided to a client of the Firm. Adv. ECF No. 202-4 at 42:1-7; 202-5 at 18:1-19:2. Erickson and Whittaker also discovered that Glen had arranged for his son, Kent, to succeed him as trustee for the client while he was ill. Adv. ECF No. 202-3 at 127:8-12; 131:2-8. Upon confrontation after Glen's death, Kent disclosed that Platt had also individually billed for legal services apart from the Firm. Adv. ECF No. 202-4 at 83:1-2; 202-5 at 20:19-24. Platt's relationship with the Firm quickly deteriorated, culminating in Platt deleting computer files from the Firm's server and resigning on April 20, 2018. Adv. ECF No. 202-3 at 133:1-3; 136:18-137:8.

**D. The Bankruptcy Case**

Woods Erickson filed lawsuits against Platt in the state court of Nevada. Relevant to this proceeding, Woods Erickson sued Platt for, among other things, intentional misconduct. Adv. Proc. No. 19-01122-gs, Adv. ECF No. 1, Exhibit 1, *Complaint*, A-18-774926-C (State Court Action).

Facing mounting legal fees incurred in his defense of the State Court Action, Platt and his wife filed their voluntary chapter 7 bankruptcy petition on November 13, 2019. The debtors scheduled Woods Erickson as a general unsecured creditor with a $1.4 million contested, disputed and unliquidated claim. They also listed counterclaims against Woods Erickson in an unknown amount as an asset. The Platts also disclosed the pending State Court Action in response to item 9 of their Statement of Financial Affairs.

A month after the Platts filed their bankruptcy case, Woods Erickson filed a notice removing the State Court Action to the bankruptcy court as Adversary Proceeding No. 19-01122-btb. A few weeks later, Woods Erickson filed the instant adversary proceeding objecting to Platt's discharge under 11 U.S.C. §§ 523(a)(2) and (a)(4) (Complaint).

**E.  The Nondischargeability Action and Nevada's Partnership Laws**

Woods Erickson asserted two causes of action in the Complaint. The first cause of action was for fraud and denial of the dischargeability of that debt under § 523(a)(2).[5] Woods Erickson stated a second cause of action under § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The court has previously addressed the claims for embezzlement and larceny by a separate memorandum. The issue currently before the court is limited to the Firm's claim for fraud or defalcation while acting in a fiduciary capacity. This cause of action is set forth in the Complaint at paragraphs 41 through 49, which read in their entirety as follows:

41.  NRS 87.210 and NRS 87.4336 create a statutory fiduciary duty between every partner of a partnership and his or her fellow partners and the partnership itself. Platt was required to account to the Firm and hold in constructive trust for the Firm's benefit, any profits derived by him without the consent of the Managing Partners and connected in any manner to the conduct of the Firm's business.

42.  Alternatively, whether Platt was acting as an employee of the Firm rather than as a limited partner, or as a limited partner, Platt still owed a fiduciary duty to the Firm which included the duty of loyalty and utmost good faith, and was required to refrain from acting for his own private gain to the detriment of the Firm.

43.  Whether as an employee or as a limited partner, Platt was barred from usurping opportunities that belong to or could have been exploited by the Firm. Platt's actions described herein constituted a usurpation of opportunities belonging to the Firm and a breach of Platt's fiduciary duty to the Firm.

44.  Platt further breached his fiduciary duties to the Firm and the other partners within the Firm by competing with the Firm,

---

[5] On April 1, 2021, the court gave its oral ruling granting summary judgment in favor of Platt as to the § 523(a)(2)(A) claims. Adv. ECF No. 74.

engaging in self-dealing, concealing information from the Managing Partners of the Firm, retaining and converting revenues that were the rightful property of the Firm, destroying Firm property, using Firm property and resources for his personal gain, engaging in fraudulent behavior that was harmful to the Firm and Firm clients while presenting himself as an agent and representative of the Firm, and engaging in a conspiracy to defraud the Firm.

45. Platt also made false and fraudulent statements while acting in a fiduciary capacity by denying that he had deleted data on the Firm server and denying that he was engaged in contacting and attempting to persuade clients to move away from the Firm.

46. Platt also created and disseminated the Fraudulent Documents in violation of his fiduciary duties owed to the Firm.

47. Platt deleted files and billing records from the Firm with the intent of concealing from the Firm and preventing the Firm from becoming aware of, his fraudulent activities, his fraudulent misrepresentations and the conspiracy in which he was involved, all of which violated his fiduciary duties owed to the Firm.

48. All of Platt's actions described herein constituted fraud while acting in a fiduciary capacity as an employee or limited partner of the Firm.

49. Pursuant to 11 U.S.C. § 523(a)(4), the discharge of Platt should be denied as it relates to this creditor.

Adv. ECF No. 1 at 8-9.

After significant motion practice in this adversary proceeding, trial commenced on May 18, 2021. After approximately four days of testimony, the parties gave their closing statements on May 24 and 25, 2021. After the trial concluded, both parties timely filed post-trial briefs.

**F.  The Judgment**

At the conclusion of Woods Erickson's initial closing argument, the court set the matter for an oral ruling, which it gave on July 29, 2021. The transcript of the hearing reflects that after reciting the provisions of § 523(a)(4), the court quoted a passage from *Lewis v. Short (In re Short)*, 818 F.2d 693, 695 (9th Cir. 1987) regarding duties owed by partners to their partnerships. It then found that the testimony at trial proved that Platt was a partner and employee of Woods Erickson and that Platt converted "fees, clients, and business opportunities [that] belonged to the firm." Adv. ECF No. 93 at 3:18-20. The court then ruled:

8

> Mr. Platt admitted he had -- he was compensated by the Renaissance Academy for legal services which were never remitted to the firm. Mr. Platt, as a partner, was required to hold, as trustee for the firm, all benefits derived from all partnership opportunities. Thus, the Court finds that the debt of $166,735 of actual damage is non-dischargeable under 11 U.S.C. Section 523(a)(4). The Court will issue a judgment order.

*Id.* at 3:21-4:3. The court concluded the proceeding by observing that "[a]ny further matters in this case need to be handled in state court because they're basically state court matters, and that's it." *Id.* at 4:4-6.[6]

The judgment, entered on August 26, 2021 (Judgment), was nearly identical to the bankruptcy court's oral ruling. Adv. ECF No. 87. As to fraud or defalcation while acting in a fiduciary capacity, the court again turned to *Short*:

> The 9th Circuit *In re Short* determined "every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.["]

Adv. ECF No. 87 at 2:10-13 [citation omitted]. The court then repeated its conclusions stated on the record at the July 29, 2021, hearing regarding Platt's actions:

> The testimony at trial provided uncontroverted evidence that Mr. Platt was a partner and an employee of the Firm, Woods & Erickson, LLP. The credible evidence showed that Mr. Platt took $31,815.00 in fees from Renaissance Academy and took $134,920.00 in fees through L&S to convert to his own benefit, fees, clients and business opportunities belonging to the Firm. Mr. Platt admitted that he was compensated by the Renaissance Academy for legal services which he never remitted to the Firm. Mr. Platt, as a partner, was required to hold as trustee for the Firm, all benefits derived from all partnership opportunities.

*Id.* at 2:14-20. The Judgment then concluded with a simple statement: "IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant ANDREW B. PLATT is hereby denied a discharge of his debt under 11 U.S.C. Section 523(a)(4) and his debt of $166,735.00 of actual damages is nondischargeable." *Id.* at 2:21-23. The damages awarded represented the

---

[6] Based in part on this statement by Judge Beesley, the parties stipulated to remand the State Court Action to the Nevada District Court. Adv. Proc. No. 19-01122-btb, Adv. ECF Nos. 86-87.

$31,815.00 in fees taken by Platt in connection with Renaissance Academy and $134,920.00 in fees taken by Platt in connection with L&S.

Platt timely appealed the Judgment to the BAP, filing his notice of appeal on September 8, 2021. Adv. ECF No. 98.

### G. The Remand

On May 17, 2022, the BAP entered its decision vacating the Judgment and remanding the case. *Platt v. Woods & Erickson LLP (In re Platt)*, 2022 WL 1199202 (B.A.P. 9th Cir. Apr. 22, 2022). The BAP observed that the bankruptcy court had "determined that Platt was a partner of the Firm for part of his tenure, that he acted with the state of mind required for larceny, and that $166,735 was nondischargeable." *Id.* at *1. The BAP noted that the bankruptcy court's larceny decision conflicted with its pretrial rulings, which is the subject of the court's prior decision after remand. *See* Adv. ECF No. 215.

As to the claim for breach of fiduciary duty, the BAP admitted that,

we lack findings that adequately reflect the court's reasoning. The record supports a determination that Platt was a partner at some point in time. But a debt is nondischargeable as a defalcation in a fiduciary capacity only if a partnership under Nevada law is tantamount to an express or statutory trust.

*Id.* at *2.

The BAP acknowledged NRS § 87.4336, which "provides that the duties of partners rise to the level of an express or statutory trust, at least as of July 1, 2006." *Id*. This is because on July 1, 2006, Nevada imposed a statutory duty of loyalty that obligated partners "[t]o account to the partnership and hold as trustee for it any property, profit or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity." NRS § 87.4336(2)(a). The revised statute imposed the trust obligations independent of any wrongdoing by the partner, thereby satisfying the fiduciary capacity requirement of § 523(a)(4). But the BAP noted that the record was unclear whether NRS § 87.4336 applied. *Platt*, 2022 WL 1199202, at *2.

The BAP instructed that on remand it was "critical that the bankruptcy court clarify whether the partnership with Platt is the original Firm partnership formed in 1995 or a new partnership formed as of January 1, 2016." *Id.* If the partnership continued to be governed by the 1995 partnership agreement, it remained subject to NRS § 87.210(1), the relevant provision of the Uniform Partnership Act applicable at that time. NRS § 87.210(1) only required a partner "to account for any benefit and hold as trustee for it any profits derived by the partner without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by the partner of its property." Thus, if the original 1995 partnership agreement still controlled, the BAP further charged the court with determining how an express or statutory trust was established without application of NRS § 87.4336. *Platt*, 2022 WL 1199202, at *2. If Nevada law imposed the requisite trust obligation on Platt, the BAP also instructed that the court address whether he had a culpable state of mind required under *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013), to except his debts under § 523(a)(4). *Id.* at *3.

The BAP concluded its decision by stating that on remand, the court had "all latitude consistent with due process and applicable law to bring the required clarity to the case." *Id.*

### H. Post-Remand Proceedings

After a post-remand status conference, the court scheduled argument and set deadlines for the parties to file supplemental briefing. The court heard the argument of the parties on December 12, 2022. At the conclusion of the hearing, the court bifurcated the issues and took the issue of larceny under § 523(a)(4) under advisement, leaving the questions involving the claim for fraud or defalcation while acting in a fiduciary capacity to be considered separately. The court entered its memorandum decision determining that Woods Erickson did not adequately plead larceny as a basis for nondischargeability on March 30, 2023. Adv. ECF No. 215.

The court then set a status conference to address the next steps in this remanded proceeding. After the status conference, the court set oral argument on the remaining issues surrounding the applicable fiduciary duties and trust relationship under § 523(a)(4). The court

heard the argument of the parties on July 7, 2023. At the conclusion of the hearing, the court

took the remaining issues under advisement.

## Analysis

Inherent in any action under § 523(a) are two questions: is there a debt owed and, if so, is

that debt nondischargeable. *Banks v. Gill Distrib. Centers, Inc. (In re Banks),* 263 F.3d 862, 868

(9th Cir. 2001); *Vendramin v. Henry (In re Henry)*, 2015 WL 5604357, at *1 (Bankr. N.D. Ind.

Apr. 30, 2015) ("In the absence of a debt, there is nothing to be discharged."). The court has

previously awarded Woods Erickson the fees Platt received from Renaissance and while

competing as L&S as damages for his breach of the fiduciary duty of loyalty. On remand, Platt

has challenged that Woods Erickson has proven any claim for breach of fiduciary duty. In short,

he argues that he owed no fiduciary duty to Woods Erickson while employed as an associate

attorney. Once he became a limited partner, Platt contends that Glen Woods authorized him to

provide legal services through L&S in competition with the Firm.

The court has thoroughly considered the testimony presented at trial and the exhibits

admitted and considered the parties' arguments. It confirms the prior decision that Platt breached

his fiduciary duty of loyalty to Woods Erickson by providing competing legal services

individually to Renaissance Academy and receiving compensation for those services directly

while an associate attorney in the amount of $31,815. Though Platt argues that he owed no

fiduciary duty to the Firm as an employee, in Nevada employees owe employers a duty of

loyalty. *White Cap Industries, Inc. v. Ruppert*, 67 P.3d 318, 319-20 (Nev. 2003). This fiduciary

duty is derived from agency principles. *Id.* at 319. Although the Nevada Supreme Court held in

*White Cap* that the employee did not breach his duty of loyalty to disclose knowledge that

another employee intended to start a competing business, it recognized that the *Restatement

(Second) of Agency*, § 381 required employees to provide employers with "principal information

which is relevant to affairs entrusted" to them. *Id*. "*White Cap Industries* stands for the

proposition that not only do employees in Nevada owe a duty of loyalty to their employers, but

also that they can be sued in certain circumstances for breach of fiduciary duty when they violate

12

this duty." *Metlife Bank, N.A. v. Evergreen Moneysource Mortg. Co.*, 2010 WL 2541729, at *2 (D. Nev. June 17, 2010).

More specifically, citing to *White Cap,* the United States District Court for the District of Nevada observed in *Tousa Homes Inc. v. Phillips*, 363 F.Supp.2d 1274, 1280 (D. Nev. 2005) that "an employee generally owes his employer a duty of loyalty respecting [a] prospective business opportunity." The testimony at trial was that Woods Erikson provided legal services to assist clients to wind up business affairs. The services Platt provided Renaissance to wind up its affairs were clearly a business opportunity within the Firm's legal practice. Platt breached his duty of loyalty by failing to give Woods Erickson notice of that opportunity. Accordingly, Platt breached his fiduciary duty to Woods Erickson and is liable in the amount of $31,815 for the fees he collected from Renaissance.[7]

Platt does not dispute that he owed a duty of loyalty to the Firm as a limited partner. Rather, he argues that Glen Woods authorized him to compete with the Firm to provide legal services individually. Woods Erickson denies that any single partner could authorize a partner to compete with the Firm. The court need not address that issue as it finds Platt's testimony to be not credible. The record does not include any written documentation corroborating Platt's version of the events. Moreover, despite using the Firm's assets to provide legal services as L&S, Platt kept his work as L&S secret. This secrecy further discredits his testimony as there would be no need to hide his work if it had been authorized.[8] Finally, Platt's testimony cannot be corroborated due to Glen Woods' death. Based on the totality of the evidence presented, the

---

[7] As noted above, the court originally remanded the State Court Action to determine the exact amount of the nondischargeable damages. Given the court's determination of damages, this is unnecessary. A "bankruptcy court has jurisdiction to enter a monetary judgment in an adversarial core proceeding," such as a proceeding to determine dischargeability under § 523(a). *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017 (9th Cir. 1997).

[8] The court notes and finds that Platt's secrecy surrounding L&S and his deletion of files from the Firm's server immediately prior to his departure are clear evidence of Platt's "knowledge of, or gross recklessness in respect to, the improper nature of" his actions as a fiduciary of the Firm, for purposes of a defalcation analysis under § 523(a)(4). *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013).

court finds that, assuming Glen could authorize Platt to provide legal services through L&S in competition with its services, Platt has failed to prove that Glen did so. Accordingly, the court finds that Platt's billings as L&S breached his duty of loyalty to the Firm. The parties agree that the total fees billed and collected by L&S totaled $134,920. The court finds that Platt is liable in this amount to Woods Erickson for his breach of fiduciary duty while a limited partner.

Accordingly, Woods Erickson has proven damages for Platt's breaches of fiduciary duties. The question remains, however, whether such damages are nondischargeable under § 523(a)(4). To prevail on a claim for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4), a plaintiff must prove that "'1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Peltier v. Van Loo Fiduciary Services, LLC (In re Peltier)*, 643 B.R. 349, 359 (B.A.P. 9th Cir. 2022) (quoting *Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (B.A.P. 9th Cir. 2013)). The Ninth Circuit Bankruptcy Appellate Panel addressed the "fiduciary capacity" requirement in *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373 (B.A.P. 9th Cir. 2011):

> The broad definition of fiduciary under nonbankruptcy law—a relationship involving trust, confidence, and good faith—is inapplicable in the dischargeability context. For purposes of § 523(a)(4), the Ninth Circuit has adopted a narrow definition of "fiduciary." To fit within § 523(a)(4), the fiduciary relationship must be one arising from an express or technical trust that was imposed before, and without reference to, the wrongdoing that caused the debt as opposed to a trust *ex maleficio*, constructively imposed because of the act of wrongdoing from which the debt arose.
>
> While the scope of the term "fiduciary capacity" is a question of federal law, the Ninth Circuit has considered state law to ascertain whether the requisite trust relationship exists. For a trust relationship under § 523(a)(4) to be established, the applicable state law must clearly define fiduciary duties and identify trust property. Trusts arising as remedial devices to breaches of implied or express contracts—such as resulting or constructive trusts—are excluded, while statutory trusts that bear the hallmarks of an express trust are not. The mere fact that state

> law puts two parties in a fiduciary-like relationship does not necessarily mean it is a fiduciary relationship within 11 U.S.C. § 523(a)(4).

*Id.* at 378–79 [internal citations omitted].

In an action under § 523(a), the plaintiff bears the burden of proving the elements of each claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "[E]xceptions to discharge generally are to be construed strictly in favor of the debtor and against those seeking to except debts from the debtor's discharge." *Searcy v. Ada Cnty. Prosecuting Atty's Office (In re Searcy)*, 463 B.R. 888, 891 (B.A.P. 9th Cir. 2012); *see also Raiman v. State Bd. of Equalization of the State of Cal. (In re Raiman)*, 172 B.R. 933, 938 (B.A.P. 9th Cir. 1994).

### A. Woods Erickson cannot establish the required trust relationship under § 523(a)(4) for Platt's breach of fiduciary duty while an associate of the Firm.

Again, simply establishing the existence of a fiduciary duty is not enough for purposes of § 523(a)(4): "the fiduciary duty must preexist the trust, and must be *substantially similar* to the role of a trustee, in that there must be a trust *res*, identifiable beneficiaries, and clear notice of the duties of loyalty, honesty, and fair dealing toward the beneficiaries in all matters affecting the trust *res*." *ATR-Kim Eng Capital Partners v. Bonilla (In re Bonilla)*, 2007 WL 3034800, at *2 (Bankr. N.D. Cal. Oct. 16, 2007), *on reconsideration*, 2007 WL 4556913 (Bankr. N.D. Cal. Dec. 17, 2007), *aff'd sub nom*. *ATR-Kim Eng Fin. Corp. v. Bonilla*, 2008 WL 4414153 (N.D. Cal. Sept. 25, 2008) [emphasis in original]. As discussed above, an employee's duty of loyalty under Nevada law is derived from agency principles. *White Cap*, 119 Nev. at 129 (citing *Restatement (Second) of Agency*, § 381). "Agency is not the kind of 'fiduciary capacity' that gives rise to nondischargeability under Section 523(a)(4) of the Code." *Chicago Midwest Credit Svc. Corp. v. Trovato (In re Trovato)*, 145 B.R. 575, 581 (Bankr. N.D. Ill. 1991); *T Street LLC v. Jaques (In re Jaques)*, 615 B.R. 608, 635 (Bankr. D. Idaho 2020) ("Any implied fiduciary obligation between the agent property management company and the principal property owner arising under Idaho Code § 6-321 is insufficient to create a fiduciary relationship sufficient to satisfy § 523(a)(4)."). Similarly, in *Cal-Micro v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1127 (9th Cir. 2003), the Ninth Circuit concluded that a corporate officer did not owe the type of fiduciary duty encompassed by § 523(a)(4): "[W]hile officers possess the fiduciary duties of an agent, they are

15

not trustees with respect to corporate assets." *See also Honkanen*, 446 B.R. at 380-81; *Castillo v. Akers (In re Castillo)*, 2012 WL 3641510, at *10 (B.A.P. 9th Cir. Aug. 24, 2012); *Swimmer v. Moeller (In re Moeller)*, 466 B.R. 525, 536 (Bankr. S.D. Cal. 2012); *South Bay Telecom v. Sweiden (In re Colton)*, 2007 WL 1615069, at *3 (Bankr. N.D. Cal. June 4, 2007).

When considering claims under § 523(a)(4) involving fiduciary duties, "this court must of course follow the path laid out by the Ninth Circuit. And that path is a conservative one, requiring some sort of actual trust relationship, not just a generalized duty of loyalty." *Braden Trust v. Chavez (In re Chavez)*, 430 B.R. 890, 897 (Bankr. D. Ariz. 2010). No such trust relationship arose from Platt's employment by the Firm as an associate attorney. For this reason, Woods Erickson has failed to prove that Platt was subject to an express trust relationship required to except damages from discharge under § 523(a)(4) for his breach of fiduciary duties arising solely from his employment at the Firm, specifically, the $31,815 in fees paid to Platt individually while an associate attorney with the Firm.

### B. Platt's breach of fiduciary duty while a partner.

Woods Erickson also maintains that Platt's liability for the $134,920 in fees he received in breach of his fiduciary duty of loyalty while a partner at the Firm is nondischargeable under § 523(a)(4) as a debt arising from defalcation while acting in a fiduciary capacity. It argues that whichever of the two potentially applicable partnership statutes applies, Nevada law imposed the requisite express trust on partners independent of any wrongdoing necessary to except the debt under § 523(a)(4).

### 1. Nevada's Uniform Partnership Act did not create an express or technical trust.

The original partnership was created in 1995, under Nevada's Uniform Partnership Act. At that time, NRS § 87.210(1) statutorily required that "[e]very partner must account to the partnership for any benefit and hold as trustee for it any profits derived by the partner without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by the partner of its property." Nevada amended its

partnership statutes in 2005, effective as of July 1, 2006 (Amended UPA). Nevada's Amended UPA currently imposes an overarching duty on partners to account "and hold as trustee for any property, profit or benefit derived from the partner … derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity." NRS § 87.4336(2)(a).

Woods Erickson recognizes that which version of Nevada's Uniform Partnership Act applies is an "open question."[9] Adv. ECF No. 220 at 5, n.2 [citations omitted]. Yet, it argues that Platt's debt for L&S's fees is nondischargeable under either partnership statute because both simply codify Nevada's common law and impose the requisite trust obligation. As noted by the BAP, the Amended UPA imposes a sufficient fiduciary duty that satisfies the requirements of § 523(a)(4) because the duty established under NRS § 87.4336(2) is imposed without reference to a wrongdoing that triggers liability. Accordingly, it establishes the requisite express trust on which a claim under § 523(a)(4) can be based.[10] *Platt*, 2022 WL 1199202 at *2.

---

[9] In the first round of post-remand briefing, both parties agreed that the Woods Erickson partnership was formed in 1995 and is governed by the Uniform Partnership Act, NRS §§ 87.010 to 87.430 *et seq.* Adv. ECF No. 203 at 11; Adv. ECF No. 210 at 47:4-48:17 (applying NRS § 87.210(1)). In the subsequent proposed findings of fact and conclusions of law submitted pursuant to the court's May 16, 2023 scheduling order (Adv. ECF No. 218), the parties' positions on the issue diverged. Platt declined to conclude whether the Uniform Partnership Act or its successor, the Amended UPA, controls, instead analyzing both and concluding that neither creates the type of trust required for nondischargeability under § 523(a)(4). Adv. ECF No. 219 at 19-20. Woods Erickson reached the opposite conclusion; that both NRS § 87.210 and NRS § 87.4336 create an express trust which satisfies § 523(a)(4). Adv. ECF No. 220 at 3:10-16; 5:21-6:9.

[10] *See also Pemstein v. Pemstein (In re Pemstein)*, 492 B.R. 274, 281 (B.A.P. 9th Cir. 2013); *Porter v. Kamien (In re Kamien)*, 2012 WL 603808, at *5, n.8 (B.A.P. 9th Cir. Feb. 9, 2012). Both cases again held that California and Washington law imposed an express or technical trust under the applicable fiduciary relationships between partners. *Ragsdale* and *Short* (cited below) established that the applicable common law imposed the required trust relationship rather than the then-applicable statute. Both states have subsequently amended their relevant partnership statutes to adopt language identical to NRS § 87.4336(2)(a). Though *Pemstein* does not remark on amended statutory language, the court in *Kamien* noted that "[t]he District Court for the Western District of Washington recently reviewed the case law and concluded that, based on *In re Short* and Wash. Rev. Code § 25.05.165(2), a partner's 'status as a fiduciary within the meaning of § 523(a)(4) is definitively established by statute and precedent [.]'" *Kamien*, 2012

On the other hand, the fiduciary duty established by NRS § 87.210 differs from that under the current partnership statute in a key aspect: it arises only if that profit is "derived by the partner without the consent of other partners." As stated by the Ninth Circuit in its examination of California's nearly identical statute, Cal. Corp. Code § 15021, "under this statute, the trust arises only when the partner derives profits without consent of the partnership; it is the sort of trust *ex maleficio* not included within the purview of § 523(a)(4)." *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986).

Woods Erickson cites *Short*, 818 F.2d at 695, in support of its argument that NRS § 87.210 imposes an express trust on partners that satisfies the requirements of § 523(a)(4). In *Short*, the debtor was the joint venturer in charge. The court found that "under Washington law, joint venturers are like partners," *id.*, and examined Washington's then-applicable state partnership statute R.C.W. § 25.04.210(1). That statute, like the California statute applied in *Ragsdale,* was virtually identical to NRS § 87.210.[11] The Ninth Circuit again emphasized that "[t]he debtor must have been a trustee before the wrong and not a trustee *ex maleficio.* Thus, constructive or implied trusts are excluded, but statutory trusts are not." *Id*. at 695 [citations omitted]. Though the Ninth Circuit ultimately held that the debt was nondischargeable under § 523(a)(4), it did so under Washington's common law because the partnership statute imposed a trust only upon the wrongful act of the partner. The Ninth Circuit later reached the same conclusion after examining Arizona's identical version of NRS § 87.210. *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185-86 (9th Cir. 1996) ("[*Ragsdale*] precludes us from holding that

WL 603808, at *5, n.8 (quoting *Errez v. Auburn Ace Holdings, LLC (In re Errez),* 2010 WL 5185399, at *2 (W.D. Wash. Dec. 16, 2010)).

[11] R.C.W. § 25.04.210(1) provides: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." As pointed out by Woods Erickson, the only difference between the Nevada, Washington and California statutes is "the word 'him' in the Washington [and California] statute is replaced with the words 'the partner' in the Nevada statute." Adv. ECF No. 210 at 48, n.18.

Arizona's identical statute does impose an express trust relationship on partners."). *Ragsdale, Short*, and *Scott*, therefore, establish that the statutory language of NRS § 87.210 does not impose a pre-existing trust relationship that would satisfy the requirements of § 523(a)(4).

The Amended UPA provides that it applies to a partnership which voluntarily elects to be governed by that Act or "[w]hich is formed on or after July 1, 2006, and which does not voluntarily elect to be governed by the provisions of NRS 87.010 to 87.430, inclusive." NRS § 87.4314. The partnership was originally created in 1995 when NRS § 87.210 applied. In 2007, after the enactment of the Amended UPA, the partnership adopted the Amended and Restated Limited Liability Partnership Agreement. The 2007 Partnership Agreement does not contain an express election of the applicable statutory framework.

In its post-remand briefing Woods Erickson conceded that NRS § 87.210 "probably" applies. *See* Adv. ECF No. 220 at 5. Presumably, it did so because the original partnership was formed in 1995, and the 2007 Partnership Agreement evidenced the intent that the formation date of the partnership remained January 1, 1995, rather than January 1, 2007. *See* Trial Exhibit M, Adv. ECF No. 202-70 at 3, ¶ 1.3(e) ("Effective Date" of the partnership defined as "the date on which the predecessor entity to the Partnership was founded, which is January 1, 1995…."); ¶ 1.3 (f) ("Founding Partners" definition refers to Glen Woods and Erickson as having "founded the Partnership and its predecessor entity on or about January 1, 1995."); 4, ¶ 1.6 (provides that "[t]he term of the Partnership commenced on January 1, 1995."). Additionally, the 2007 Partnership Agreement refers to the earlier Uniform Partnership Act in at least one provision. Section 3.1 of the 2007 Partnership Agreement, governing the partners' limited liability, references and applies NRS § 87.150(3) as the basis for any partner's limited liability for partnership debts or obligations. Trial Exhibit M, Adv. ECF No. 202-70 at 7. NRS § 87.150(3) addresses the limited liability of a registered limited liability partnership under the original

Uniform Partnership Act.[12] The 2007 Partnership Agreement does not reference or cite the Amended UPA.

Woods Erickson suggests that the 2007 Partnership Agreement may have created a new partnership because it added two new partners. Adv. ECF No. 220 at 5, n.2. This suggestion is raised in a footnote. The court gives little credence to this undeveloped argument given the clear language of the Amended and Restated Partnership Agreement:

> The Managing Partners and the Limited Partners (herein collectively referred to as the "Partners") hereby amend and restate in their entirety the provisions of the existing agreement of limited liability partnership of Woods & Erickson LLP (the "Partnership") pursuant to the provisions of the Nevada Revised Statutes Sections 87.440 et. seq., which law shall govern the rights and obligations of the parties hereto, except as may be set forth elsewhere herein to the contrary.

Exhibit M, Adv. ECF No. 202-70 at 2, ¶ 1.1.

The limited references within the 2007 Partnership Agreement discussed above demonstrate that it merely amended the prior partnership agreement, which, in part, included the addition of new partners. The limited partnership then amended the 2007 Partnership Agreement to add and remove other partners and change the name of the partnership effective August 13, 2013. The evidence is equally clear that effective January 1, 2016, Woods Erickson added Platt and Kent Woods as limited partners though neither signed any written amendment to the partnership agreement. The record details the transition of Platt from an associate to a limited partner and clearly demonstrates that both Platt and the partnership treated him as a limited partner.

For these reasons, the court finds that the 2007 Partnership Agreement is governed by the prior partnership statute, rather than the current Amended UPA. As such, NRS § 87.210, not NRS § 87.4336(2), applies in this proceeding.[13] To the extent Woods Erickson relies on NRS

---

[12] The Amended UPA addresses limited liability partnerships at NRS § 87.433(3).

[13] The court's conclusion is bolstered by the holding of at least one court that has addressed the impact of the Uniform Partnership Act on partnerships adding new partners. In examining Va. Code § 50–17, a statute identical to NRS § 87.170, the United States District Court for the Eastern District of Virginia noted that that statute, governing incoming partner liability, "altered

§ 87.210 as the basis for the requisite fiduciary duty under § 523(a)(4), it failed to state a claim for defalcation while acting in a fiduciary capacity.

### 2. Nevada common law did not impose an express or technical trust on Platt prior to his breach of fiduciary duty.

Though the state partnership statutes did not impose the required express trust to support a § 523(a)(4) claim in *Ragsdale, Short,* and *Scott*, the Ninth Circuit concluded in those cases that the applicable common law did. *See also Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 715 (B.A.P. 9th Cir. 1999) ("This line of Ninth Circuit decisions recognizes that either statutes or case law can give rise to a trust within the meaning of § 523(a)(4)."). In *Ragsdale*, the Ninth Circuit concluded that a partner's express trust arose not from the statutory language but from common law. The Ninth Circuit recognized that *notwithstanding* the language of California's then applicable partnership statute (Cal. Corp. Code § 15021): "If state law makes clear that a partner necessarily is a *trustee over partnership assets for all purposes*, then that partner is a fiduciary within the narrow meaning of § 523(a)(4)." *Ragsdale*, 780 F.2d at 797 [emphasis added]. Surveying the applicable law, the Ninth Circuit concluded: "California courts…have raised the duties of partners beyond those required by the literal wording of § 15021…This is more than just a fiduciary relationship created in response to some wrongdoing; California has made all partners trustees over the assets of the partnership. Accordingly, we hold that California partners are fiduciaries within the meaning of § 523(a)(4)." *Id.* at 796-97.

Similarly, in *Short* the Ninth Circuit held that "[a]s the California courts, the Washington courts have also expanded the duties of partners beyond those required by the literal language of the state statute." 818 F.2d at 695. Specifically, the debtor was acting as a managing partner and was in charge of the joint venture. *Id*. at 695-96. Washington common law held that "it is the duty of a partner who manages, conducts, or operates a partnership business, to render complete

---

slightly the common law because, at common law, admission of a new partner dissolved the old partnership and created a new one." *Citizens Bank of Massachusetts v. Parham-Woodman Med. Assocs.*, 874 F. Supp. 705, 708 (E.D. Va. 1995). Even if Nevada common law presumed that the addition of new partners dissolved the existing partnership, like Virginia, Nevada adopted a statute which eliminated any such presumption.

and accurate accounts of all of the partnership business. This rule is grounded upon the theory that *the managing partner is acting as a trustee for his firm.*" *Id.* at 696 (emphasis in *Short,* citing *In re Wilson's Estate,* 315 P.2d 287, 292 (Wash. 1957)). Based on its review of Washington's common law, the Ninth Circuit concluded that the debtor "had a duty to act as trustee for the affairs of the joint venture" and "was a fiduciary for the joint venture when he committed the defalcation." *Id.*

At oral argument on July 7, 2023, Woods Erickson cited to two cases to demonstrate that Nevada common law is similar to that of the California, Washington, and Arizona law relied on by the Ninth Circuit in *Ragsdale*, *Short* and *Scott*, respectively. The first, *Fox v. Fox*, 401 P.2d 53, 57 (Nev. 1965), concerns a dispute related to a marriage dissolution, in which the Nevada Supreme Court observed that in "management of the community property [a husband's] position is that of a trustee for the wife's share analogous to the trustee relationship of a partner to his partnership or an agent to his principal." In *Fox,* as in *Short,* the party charged with the trust obligation was responsible for the management of the property at issue. *Id*. at 194-95. Unlike the common law in California and Washington, this bare reference to the "trustee relationship of a partner to his partnership" reveals nothing about when the trust was allegedly established or whether such trust would be express or technical for purposes of § 523(a)(4).

Woods Erickson also cited *Foley v. Morse & Mowbray*, 848 P.2d 519, 522 (Nev. 1993), which addressed a partner's separation from his law firm. Foley, the former law firm partner, was sued by his former law firm for the failure to account for three contingency fee cases. In *Foley*, the Nevada Supreme Court quoted California Court of Appeals case *Rosenfeld, Meyer & Susman v. Cohen*, 237 Cal.Rptr. 14, 22–23 (Cal. Ct. App. 1987), also a case involving law firm dissolution, stating "every partner must account to the partnership for any benefit and hold as trustee for it any profits derived *without the consent of the other partners* from any transaction of the partnership or from any use of its property." *Foley,* 848 P.2d at 522 [emphasis added]. The Nevada Supreme Court concluded that Foley failed to bear the burden to account for the fees. Yet, the language from *Rosenfeld* relied on by the Nevada Supreme Court in its ruling is the

language of Cal. Civ. Code § 15021, which the *Ragsdale* court concluded created a trust *ex maleficio*, not an express or technical trust. As noted above, the language of Cal. Civ. Code § 15021 is nearly identical to that of NRS § 87.210. Accordingly, the Nevada Supreme Court's holding in *Foley* merely recognized the imposition of the trust *ex maleficio* where the partner derived profits without the consent of the other partners.

Similarly, Woods Erickson cites *Clark v. Lubritz*, 944 P.2d 861, 864-65 (Nev. 1997), to support its argument that Nevada's common law imposes additional fiduciary duties on partners akin to those found in California, Washington, and Arizona. *Clark* quotes 59(A) *Am. Jur. 2d Partnership* § 425 (1987) for the proposition that: "The fiduciary duty among partners is generally one of full and frank disclosure of all relevant information for just, equitable and open dealings at full value and consideration." Adv. ECF No. 220 at 3:20-27. Consistent with well accepted principles, *Clark* also establishes a *general* fiduciary duty between partners under Nevada common law. This differs from the heightened duties recognized in *Ragsdale* and *Short.* A partner's duty of frank and full disclosure fails to make "clear that a partner necessarily is a trustee over partnership assets for all purposes." *Ragsdale*, 780 F.2d at 797.

The cases cited by Woods Erickson demonstrate the dearth of applicable case law examining the nuances of trust obligations between partners under Nevada common law.[14] The court has similarly not found any Nevada cases that dispositively address the specific issue raised here. In the same vein as *Fox, Foley,* and *Clark,* the court is aware of two bankruptcy decisions authored by the Hon. Bert Goldwater in 1981 that briefly mentioned the trust obligations of partners for purpose of § 523(a)(4). Considering the fiduciary obligations of a real estate broker in *Williams v. Bernadelli (In re Bernardelli)*, 13 B.R. 656, 657 (Bankr. D. Nev. 1981), the bankruptcy court generally stated: "[S]ection 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of…partners, and other persons similarly situated." (citing 3 Collier on Bankruptcy 523-99-523-102 (15th ed. 1980)).

---

[14] Platt concludes that "[t]here are zero similar decisions in Nevada." Adv. ECF No. 213 at 3, n.2; *see also* Adv. ECF No. 219 at 18.

In *Haddad v. Haddad (In re Haddad),* 10 B.R. 276, 282 (Bankr. D. Nev. 1981), the bankruptcy court considered claims against a surviving partner brought by the other partner's widow under § 523(a). The debtor had concealed receipt of insurance proceeds while requiring the widow to pay half of an outstanding partnership debt. Considering the general contours of § 523(a)(4) Judge Goldwater observed that "[g]enerally, the characterization of a debtor in a fiduciary capacity has been limited to express trusts and not to trusts that may be imposed because of the very act of wrongdoing out of which the contested debt arose." *Id*. at 282. For this reason, the court stated: "Section 523(a)(4) is not generally applicable to partners as fiduciaries." *Id*. Though the bankruptcy court denied the § 523(a)(4) claim for lack of fraud, it recognized that the debtor was under a specific trust obligation that arose upon the death of his partner: "when a partnership is dissolved by the death of one of the partners, the survivor becomes a trustee and holds the partnership moneys in a fiduciary capacity for the representatives of the deceased." *Id*. (citing *Haggerty v. Badkin*, 66 A. 420 (N.J. Ch. 1907)). On appeal, the BAP applied California law and reversed the bankruptcy court's decision denying the creditor's § 523(a) claims. 21 B.R. 421, 424 (B.A.P. 9th Cir. 1982), *aff'd*, 703 F.2d 575 (9th Cir. 1983). The BAP also recognized that under California law, a surviving partner becomes a trustee of the partnership property for the decedent and his beneficiaries. *Id*. at 424. The BAP held the debt was nondischargeable for fraud under § 523(a)(2), deeming it unnecessary to decide the § 523(a)(4) claim. *Id.*

Like the decisions cited by Woods Erickson, neither *Bernardelli* nor *Haddad* are particularly helpful when evaluating whether Nevada common law imposes a trust obligation on partners independent of any wrongful action. Indeed, the bankruptcy court's comments in *Haddad* are not attributed specifically to either Nevada or California law. The court finds, however, that this lack of clarity distinguishes Nevada common law on the trust obligations of partners from that of California, Washington, and Arizona. As established in *Ragsdale, Short* and *Scott,* the common law of these states "makes clear that a partner necessarily is a *trustee over partnership assets for all purposes ...* within the narrow meaning of § 523(a)(4)." *Ragsdale*, 780 F.2d at 797 [emphasis added]. The common law of Nevada does not.

The court finds this case to be akin to *Murray v. Woodman (In re Woodman)*, 451 B.R. 31 (Bankr. D. Idaho 2011). In *Woodman*, the Idaho Bankruptcy Court decided that its statutory framework for limited liability companies did not establish an express or technical trust, and thus the debtor's alleged breach of fiduciary duty was not actionable under § 523(a)(4). The statute at issue in *Woodman*, Idaho Code § 53-622(2),[15] was sufficiently similar to the language in Cal. Corp. Code § 15021 that the *Woodman* court analogized the case before it to *Ragsdale.* Recognizing the statutory similarities, the *Woodman* court concluded that "[a]lthough [*Ragsdale* and its progeny] preclude the Court from holding that the language of Idaho Code § 53–622(2) creates the type of express trust required by § 523(a)(4), if Idaho case law has expanded the duties of LLC members to make them trustees over LLC assets, those members may qualify as fiduciaries under § 523(a)(4)." *Woodman*, 451 B.R. at 40. Finding just one Idaho state case considering "the issue of fiduciary duties between LLC members," the *Woodman* court concluded that because the case "did not go so far as to deem LLC members to be trustees over LLC assets," it would not find Idaho LLC members are fiduciaries within the narrow meaning of § 523(a)(4). *Id.; see also Donohoe v. Hurbace (In re Hurbace),* 61 B.R. 563, 566 (Bankr. W.D. Tex. 1986) ("Texas courts have not, to date, extended the partnership relationship beyond the frame of reference used in § 21 of the [Uniform] Partnership Act. Generally, the relationship is a broad fiduciary duty based upon trust, confidence, and good faith—far too broad from the narrow construction of fiduciary required by the Supreme Court cases previously cited."); *LSP Inv. P'ship v. Bennett (Matter of Bennett)*, 989 F.2d 779, 783-84 (5th Cir. 1993)[16] ("A number of

[15] Idaho Code § 53-622(2) (2009) provided, "Every member and manager must account to the limited liability company and hold as trustee for it any profit or benefit derived by that person without the consent of more than one-half (½) by number of the disinterested managers or members, or other persons participating in the management of the business or affairs of the limited liability company, from: (a) Any transaction connected with the conduct or winding up of the limited liability company; or (b) Any use by the member or manager of its property, including, but not limited to, confidential or proprietary information of the limited liability company or other matters entrusted to the person as a result of his status as manager or member."

[16] In *Matter of Bennett*, the Fifth Circuit discussed *Hurbace* but drew a distinction between general partners and managing partners much like the Ninth Circuit did in *Short*. Other courts

25

courts have addressed the issue of whether a partner generally owes the type of fiduciary duty contemplated by section 523(a)(4) to his co-partners. The courts are split on this issue with approximately half finding that such a fiduciary duty is owed, and the other half finding that it is not.").

Nevada law recognizes the fiduciary obligations owed by partners to other partners and the partnership. But this alone does not clearly establish an overarching trust obligation on every partner. Courts have recognized that certain situations such as the death of a partner, the management of a partnership, or the relationship between general and limited partners have imposed trust obligations sufficient to warrant exception of damages for defalcation while acting under a fiduciary duty. Platt held none of these positions. Rather, he was designated a limited partner. To the extent that he owed Woods Erickson a fiduciary duty it was generally one of trust, confidence, and good faith. These more generic duties are not sufficient to impose an express trust on partners absent any wrongdoing. Like *Woodman*, Nevada common law cited by Woods Erickson does not go so far as to deem partners to be trustees over the partnership assets for all purposes.

---

have similarly recognized that managing partners, or general partners in a limited partnership, have a sufficiently defined trust obligation independent of any wrongdoing to fall within § 523(a)(4). *See, e.g., Abrams v. Sea Palms Assocs., Ltd. (In re Abrams)*, 229 B.R. 784 (B.A.P. 9th Cir. 1999) (general partner of limited partnership); *Andrews v. Wells (In re Wells)*, 368 B.R. 506, 512 (Bankr. M.D. La. 2006) (analogizing managing member of LLC to managing partner); *Zohlman v. Zoldan (In re Zoldan)*, 221 B.R. 79, 87 (Bankr. S.D.N.Y. 1998) (managing partner); *Arnett v. Weiner (In re Weiner)*, 95 B.R. 204, 207 (Bankr. D. Kan. 1989) (managing partner); *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 991 (Bankr. N.D. Ind. 1988) (general partner of limited partnership). Here, however, Platt was not in such position of management. Rather, he was a "limited partner." Again, this designation may be limited to the status of the partnership as a registered limited liability partnership but the parties fail to discuss the significance of Platt's status as a limited partner whose compensation was based on 50% of his billings only. The court notes that under NRS § 87A.340(1), adopted in 2007, "[a] limited partner does not have any fiduciary duty to the limited partnership or to any other partner solely by reason of being a limited partner."

## **Conclusion**

Platt breached his fiduciary duties by appropriating partnership opportunities, providing legal services directly to Renaissance Academy in the amount of $31,815 while an associate attorney and through L&S while a limited partner of Woods Erickson in the amount of $134,920. However, neither the applicable statute, nor Nevada common law, imposes on partners or employees the type of fiduciary duty required to establish an express or technical trust for purposes of § 523(a)(4). Without the requisite express or technical trust, Woods Erickson's claims against Platt for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4) must fail. For this reason, the court's Judgment, to the extent it ruled in favor of Woods Erickson on its cause of action under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, must be amended to deny that claim. A separate judgment shall be entered addressing the court's decisions on both remanded claims under § 523(a)(4) for larceny and defalcation while acting in a fiduciary duty.

IT IS SO ORDERED.

* * * * *

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #